FORTY-NINTH ANNUAL REPORTS, 1897. 643

Pearce et als. vs. State ex rel. District Attorney et als.

## No. 12,391.

MRS. CLAUDIA ·PEARCE, WIFE OF, ET ALS. VS. STATE OF LOUISIANA EX REL. P. BREAZEALE, DISTRICT ATTORNEY, M. J. FOSTER, GOVERNOR, AND THE SHERIFF.

*Motion to Dismiss.*—There is no difference, in so far as relates to the action of the judge granting the appeal, between an order fixing a return with date therein inserted, and a petition to him presented with an order appended fixing the return on a day fixed. In either case it is the judge who named the day, and if he commits an error, the appellant, who has sought no undue advantage, can not be prejudiced by the judge's act.

*Locus Standi.*—The State has the right and power to stand in judgment against a defaulting tax collector for levee taxes.

*Judgment Confessed is Valid.*—The tax collector and his sureties can confess a valid judgment recognizing the existence of a mortgage on the immovable property of the former.

*Scope of Mortgage Resulting from Bond.*—The mortgage confessed covers the amount of State and parish taxes that are delinquent and the amount of levee taxes that are delinquent.

*Bond in Favor of All Persons Interested for Taxes Collected.*—The tax collector's bond, which gave rise to the mortgage is conditioned for the faithful performance of ·the tax collector in the collection of and accounting for State and parish taxes and the levee tax. The language of the statute is that the bond shall operate as a mortgage in favor of the State, parish *and all persons interested* in matter, the court holds, of amounts collected as taxes.

*Liability of Vendees of Property Mortgaged.*—As there existed a mortgage on the property, those who bought the property are in a position similar to that of their vendor, as relates to the mortgage.

*Bond Covers Duties Contemplated When it Was Signed.*—The bond covers the duties imposed before it was signed and may cover duties imposed since it was signed, provided they were within the scope of the contract.

*Effect of Pact de non Alienando.*—The clause *de non Alienando*, dates from the date of the registration of the bond. Art. 354, R. S., provides a date from which it shall exist, but does not limit the effect to the one day upon which the bond was registered.

*Damages Not Allowed.*—The appellant has admitted an error and ordered a re-advertisement of the property for sale. The state of the facts at the time the injunction issued must control. Appellant's prayer for damages is rejected.

A PPEAL from the Tenth Judicial District Court for the Parish of Avoyelles. *Cullom, Jr., J.*

---

*J. C. Cappel* and *Wm. H. Peterman* for Plaintiffs, Appellees.

---

*M. J. Cunningham*, Attorney General and *Phanor Breazeale*, District Attorney (*A. V. Coco*, of Counsel), for Defendants, Appellants.

Argued.and submitted February 17, 1898.
Opinion handed down March 1, 1897.
Rehearing refused April 12, 1897.

ON MOTION TO DISMISS.

The opinion of the court was delivered by

BREAUX, J.    The appellees filed a motion to dismiss the appeal.

They allege as facts upon which the motion is founded that the record shows that judgment was entered in chambers on December 30, 1896.   On the same day the appellant filed a petition for an appeal and prayed "that a suspensive and devolutive appeal be granted from the judgment rendered in said above cause, returnable on the second Tuesday of January next, the twelfth day of said month."    The order of appeal, in conformity with the appellant's prayer, made the cause returnable on the second Tuesday of January, 1897, the twelfth day of the month.

The return day was not the second Tuesday but the second Monday of January.    There was an error committed.

Whether it is good ground to dismiss the appeal is the question for our determination.

The act of the Legislature of 1839, relative to appeals, provides: "That hereafter no appeal to the Supreme Court shall be dismissed, on account of any defect, error, or irregularity in the petition or order of appeal, or in the certificate of the clerk or judge, or in the citation of appeal or service thereof or because the appeal was not made returnable at the next term of the Supreme Court, whenever it shall not appear that such defect, error or irregularity is imputed to the appellant; but in all such cases the court shall grant a reasonable time to correct such errors or irregularities (in case they are not waived by the appellee) and may impose on the appellants such terms and conditions as in their discretion they may deem necessary for the attainment of justice; and may impose such fine on the officer who shall have caused such irregularities as they may deem proportionate to the offence."

It is here argued by the appellees that the error was attributable to the fault of the appellant or his counsel.    In Trimble vs. Brichta, 10 An. 779, cited by the appellees in support of their motion to dismiss, the motion for an appeal was made verbally and the court

said that as it was the duty of the judge in granting the appeal to fix the return day in accordance with the law and rights of the appellees, and as there was nothing in the record to show that the appellant suggested any particular return day the order of appeal was considered as the act of the judge and the appeal was not dismissed.

In Citizens Bank vs. Ruty, 26 An. 747, the court said: In this case the appeal was made in writing and the time fixed for the return thereof by the judge was the day asked for by the appellants. If they erred the error is their own.

A similar question arose on a motion to dismiss in the case of Chaffe & Sons vs. Heyner, 31 An. 574, in which the court held that where an application for appeal was made in open court, and the time for the return day made by the judge was in compliance with the motion of appellant's attorney, it was none the less the act of the court and not the act of the attorney. While in this case the court did not overrule the 26 An. case *ubi supra*, it withheld its approval and used the following language with reference to the decision: "Perhaps we should not have ruled as the court then did."

In Wooton vs. LeBlanc, 32 An. 692, the court reached the conclusion that the error was attributable to the appellant, and dismissed the appeal.

In State vs. Dollwood, 33 An. 1229, in matter of a similar error, it was held that it was the error of the judge.

There is a diversity of views expressed in the different decisions upon the subject. There were dissents, which necessarily lessen the certainty of decisions as authority. Under the circumstances we feel at liberty to consider the question as *res nova*. The judge in signing the order was exercising one of the judicial functions with which he is entrusted. It is the judge who fixes the date. It was his act and not the act of the counsel by whom the motion was made for an appeal. We can not take it for granted that he was misled by counsel, and that he intended to issue another order and fix another date different from the date fixed.

Whatever antagonism there may be between the law and the act. It is the act of the judge. The error committed is his error, until it conclusively appears that it was caused by the appellant. The order of appeal is one removed from the appellant. The order was that of

the judge, uninfluenced, in so far as we know, by the petition, or the order which was presented to him for his signature. There is, in our view, substantially no difference between a motion with an order fixing the return day and a petition with an order fixing a return day. In each, on the face of the papers, *non constat* that it is not the order of the judge or that he was misled.

The motion to dismiss is therefore overruled.

### STATEMENT OF FACTS.

Plaintiffs seek by an injunction directed against the execution of a writ of *fi. fa.* issued upon a judgment obtained by the State of Louisiana against Clifton Cannon, formerly sheriff and tax collector of the parish of Avoyelles, to restrain the execution of the judgment.

We are informed by the record that the State, by confession of Cannon and the sureties on his bond, procured a judgment against them, with recognition of a mortgage on property described in the petition filed for the State, which included the plantation seized under the judgment enjoined; the judgment confessed rejected all pleas and right of discussion.

Cannon, it appears, qualified as sheriff on the 23d of June, 1892, by furnishing bond as required, which was duly recorded. One of the bonds was dated and placed of record June 23, 1892; the other, March 10, 1893. It was upon these bonds that suit was brought and judgment obtained.

Plaintiffs inherited the property seized from their mother, Mrs. Mary E. Bennett, wife of S. S. Pearce, Sr., who had purchased it from Cannon on April 13, 1893.

The following are the grounds upon which is based the right for an injunction:

1. That the State was without right or power to sue a delinquent tax collector for levee taxes. And, in the alternative, should the court hold that the State can properly sue to recover levee taxes, and that the defaulting tax collector and his sureties can confess a judgment which recognizes the existence of a mortgage on the lands of the appellees, plaintiffs contend that the effect of the mortgage must be limited to the amount of the State taxes that are delinquent and not extended to cover delinquent levee taxes; for the reason that the tax collector's bond, which alone gives rise to the mortgage, is conditioned only for the faithful performance of his duty in the

collection of and accounting for State and parish taxes; that the mortgage resulting from the recordation of the tax collector's bond covers alone his delinquencies in the matter of State and parish taxes, and can not be extended so as to include levee taxes.

In the second place, the plaintiffs urge as grounds for the injunction that if payments had been properly applied by the Auditor there would have been a reduction of the shortage on all accounts, licenses, State and levee taxes, and that as to the levee taxes, the judgment for their amount should have been personal as against Cannon and without mortgage effect.

Another ground of injunction denies the right of appellants to proceed against appellee's property by direct seizure.

Another ground is that the property was advertised to be sold under the writ of *fi. fa.* on the fourth Saturday, the 20th of June, and that there is no such day in the calendar, and lastly, that the judgment enjoined is, so far as these appellees are concerned, an absolute nullity, because it decrees mortgage rights against the property of the appellees upon the confession of persons who are strangers to the title, in a proceeding in which the appellees were not made parties.

The injunction was maintained in the District Court. The State prosecutes this appeal. It is correctly alleged by plaintiffs that the amount of the levee taxes collected by Cannon, sheriff, and not paid over by him was four thousand nine hundred and ninety-one dollars and thirty-seven cents, and that this amount was included in the judgment which the State obtained against him on the petition in the suit in which Cannon and his sureties confessed judgment—*i. e.*, the judgment enjoined in the case before us.

### ON THE MERITS.

We take up the first ground before us for our determination: the power *vel non* of the State to sue for and recover moneys collected by the sheriff for account of the levee district.

If we should grant all that is claimed by plaintiffs on the ground just stated, the judgment obtained would be a nullity only to the extent that the amount of the levee taxes was collected and not paid over by the sheriff. The judgment would remain valid for the State and parish taxes. The entire judgment would not be null. A judgment may be annulled in part and in part maintained. The con-

sideration of the judgment does not appear to have been disputed in the lower court. But even as to the levee taxes the judgment is not a nullity on the ground urged.

It can not be denied that the statutes secured to the Red River, Atchafalaya and Bayou Bœuf Levee District the right to sue in all matters affecting the interests of the board. Section 3 provides that the board shall have the power to sue and shall be sued in its corporate name, but it does not follow that all suits in any manner affecting the rights or the revenues of the levee district must be brought by or against the Board of Levee Commissioners in the absence of all statutory declaration upon the subject.

The sheriff, under Sec. 9 of Act 79 of 1890, was in duty bound, whenever ordered by the Board of Commissioners, to collect the taxes levied on the tax rolls furnished him for the purpose at the same time and in the same manner as was prescribed for the collection of State and parish taxes; and he was bound to account to the State Treasurer for the collection; in other words, the sheriff is responsible to the State Treasurer for the levee taxes collected. That officer is made the keeper of the fund and the sheriff is required to settle with the Auditor for this tax as he is required to settle for the other taxes he collects.

It does not by the language of the statutes appear to have been contemplated by the legislator that the board would institute suits against defaulting sheriffs and compel them to settle and pay over to it the taxes collected and that the board would at some period of time not stated pay over to the treasurer. On the contrary, these taxes were placed on the same footing as any other tax; to be collected, accounted for, and subsequently paid out by the State Treasurer. The Levee Board was not in any manner made the custodian of the levee fund. By the language of the statutes the bondholders and other creditors are to look to the State Treasurer for payment—that is, all warrants are to be drawn on this officer and to the extent of the funds received the State is placed in a fiduciary position. Sec. 20 of the Act of 1892 provided that all funds collected for the board shall be transferred to the credit of the district by the State Treasurer and the officers shall proceed to collect the taxes.

In addition, it is manifest that the amount was, in every respect, a tax. It must as such fall within the control of the section of the Revised Statutes which provides that the Auditor shall direct pros-

Pearce et als. vs. State ex rel. District Attorney et als.

ecutions in the name of the State for all official delinquencies in relation to the assessment, collection and payment of the revenue. With reference to the provisions of Sec. 17 of the same act of 1890, we find it impossible to agree with counsel. *Mandamus* was not the remedy. The Board of Levee Commissioners may appeal to the courts; the amounts collected would have to be paid in to the treasurer; the process (*Mandamus*) would only be anciliary to the State's authority and can not in a case such as the one at bar be the remedy. Moreover, the defendant sheriff and his sureties having confessed judgment, they have admitted the authority of the plaintiff in the case to stand in judgment.

This brings us to the next question involved here: that the mortgage resulting from the tax collector's bond covers his delinquencies in the matter of State and parish taxes, and can not be extended so as to include levee taxes.

Considered as an original question the sheriff and his sureties on the bond are responsible for all taxes collected by him. As to the mortgage which results from the recorded bond the statute provides that the "bonds" when so registered shall operate from and after the date of registry, as a mortgage on all real estate of the principal obligors therein, in *favor of the State, parish and all persons interested.*" (Italics ours.)

This includes, in our judgment amount of the taxes assessed under State authority; collected by the sheriff as taxes which he has failed, after collection, to pay to the State Treasurer; to be placed by that officer to the credit of the levee board of the district.

The conditions of the sheriff's bond as tax collector are that he shall perform all the duties incumbent upon him as tax collector; this includes surely an accounting for all taxes collected. The performance of the principal's duties as collector of taxes is secured by the mortgage which has been recognized in the judgment confessed and by which unquestionably the tax collector is bound.

The plaintiffs consider that this position is correct in so far as the judgment confessed affects the right of those who confessed judgment and make no complaint personal to them; but they urge that confession resulting in a judgment recognizing a mortgage upon their property can not operate to their prejudice; that they have a standing to defeat it if they can.

In answer to this complaint, we think it is sufficient to say that, as

we have already reached the conclusion that there existed a mortgage on the property after the tax collector had qualified and his bond had been recorded, those who bought the property are in no better position than the vendor was at the date of the sale. They purchased from the tax collector after his bond had been recorded and after the levee district had been created by statute. A valid mortgage against the tax collector was a valid mortgage against them as his vendees,

We pass to the next objection urged: that the levee district was not in existence when the conditions of the tax collector's bond were defined by law; and that those conditions can not be enlarged so as fo include a liability arising under a subsequent statute. We can not overlook the fact, in deciding this point, that the sheriff's bond was recorded subsequent to the creation of the board, and that its conditions included the duty of collecting the levee taxes. The Constitution directed the Legislature to maintain a levee system and to that end to levy taxes. The duty of collecting those taxes in the parish for which he was sheriff, devolved upon him at the date the bond was recorded. He acted under it and received the taxes. The plaintiff, despite the State's mortgage, chose to buy the property.

A similar question was decided it McGuire vs. Bry, 3 An. 196. As the *syllabus* covers the point decided, we extract from it: "The sureties on a bond given by a sheriff for the collection of the parish taxes can not, when sued as sureties for a portion of the taxes collected, but not paid over by the sheriff, contest the legality of the police jury making the assessment. By receiving tax roll and executing bond, the sheriff and his sureties recognized the authority of the police jury.

"It is too late to contest the validity of their ordinances after having acted upon them and collected the taxes."

This principle was affirmed in Police Jury vs. Brookshier, 31 An. 736.

If the sureties can not contest the legality of the tax collected which their principal has in his possession, it follows that purchasers of property from the tax collector can not set up the defence that the principal, their vendor, never legally contracted to collect the taxes which he has collected.

Here, before the execution of the official bond of the sheriff, the duties under the statutes had been imposed. If an individual had

furnished such a bond and mortgage for the faithful performance of a duty he certainly would be held bound by the conditions expressed in the bond, and his mortgage would be valid, as no alteration has been made since it was given.

The Legislature has the power to change the duty of the officers, and those who subsequently enter upon obligation upon bonds required or purchase property affected by a mortgage under the bond can not claim or contest the validity of the mortgage on the grounds here urged.

It has been held by a number of courts of this Union that the Legislature has power at any and all times to change the duties of officers, and that it is in effect as though the power was recited in the bond, provided they were within the scope of the contract as originally contemplated by the parties. This covers duties subsequent to the date of the bond as well as those preceding that date. Am. and Eng. Ency. of Law, Vol. 24, p. 882.

Here the case is much stronger for the appellants than the one to which we refer, for the duties were imposed to collect the tax before the bond was signed.

The question of credit given by the Auditor is before us for our determination. The complaint is that the Auditor credited payment made in reduction of the defalcation to the levee fund; that the whole tax collected during stated months was applied by that officer to the credit of the levee fund. This, it appears, was done by request of the tax collector. Having already determined that the collection by the tax collector of the levee tax gave effect as a mortgage to his bond to the extent of the amount collected, it would serve no purpose to pass upon this question. The officer was bound for all the taxes collected, and his bond operated as a mortgage to secure the payment of all taxes collected by him.

Another objection insisted upon by the plaintiffs, is the direct seizure made of the property owned by them; in other words, it is urged that the plaintiffs should have proceeded by hypothecary action and not by direct seizure, as (they assert) the property at the time of seizure was in the hands of third parties. It is a fact as stated by the plaintiffs, that Cannon, sheriff, became the purchaser of the property in controversy after his bond had been recorded; and that a few days subsequent it was sold to Mrs. Mary Pearce, and that upon her death it descended to the appellees, her heirs. The point here is

grounded by the appellee on the fact clearly stated that the lands which had been seized did not belong to Cannon, the principal obligor at the date of the registry of his official bond. That he did not acquire title to the land until after the registry, and that therefore Sec. 354 of the Revised Statutes did not apply, as it limits the pact *de non alienando* to mortgages on lands which may have belonged to the principal obligor at the date of the registry of his official bond.

In our judgment, the section does not limit the fact to the extent urged by the appellees.

The right to the pact dates from the registry of the bond, but is not limited to that date alone in our view. This court said in School Board vs. Cousin, 31 An. 298: " For the security of these bonds the law has seen proper as it were to write on them a sweeping clause *de non alienando*, as provided in 354, R. S."

We think that it is, as it were, a maximum as to remedy which includes a *minimum;* covering all property bought and sold, after registry, as well as all property of the sheriff at the time of the registry.

The pact *de non alienando* is not statutory save in this statute here. It owes its existence to jurisprudence. It has been recognized, as is well known, in a number of decisions.

Interpreting the statute here this court has said that it was as if it had been written in the bond. Case cited *ubi supra.*

In another case, Fluker vs. Bobo, 11 An. 609, with reference to the State here, the court held, " that it was intended to give to the registry of the bond (*as to the property sold after its registry*) the same effect as that conferred in acts of sale by the clause of *non*-alienation (italics ours), thus including all property on which there is a mortgage by the registry of the bond.

The last of appellee's grounds is that the property was advertised to be sold under a *fi. fa.* " on the fourth Saturday, the 20th of June, and that there is no such day in the calendar."

The appellants here, in effect, admitted the error, and it appears that a re-advertisement was ordered.

It appears of record that the admission of error was made after the injunction had been issued. The state of the facts at the time the writ of injunction issued must be considered, and not facts subsequently happening.

The applicants claim damages for the reason that plaintiffs' action

presents a case of an aggravated abuse of the equitable writ of injunction.

We do not think that damages should be allowed. The writ was not absolutely without any ground. The plaintiffs in the writ have withdrawn the sale of the property included in the erroneous advertisement and have ordered a re-advertisement since the injunction was issued.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed.

It is further ordered, adjudged and decreed that plaintiffs' injunction be dissolved and all their demands rejected, save the one that the property be not sold before the date of sale is advertised as required—that is, be not sold as it was at first advertised, "on the 20th day of June."

The appellees pay costs of appeal.