(91 South. 245)

No. 24184.

## WILDER v. JACKSON et al.

(Nov. 3, 1920.  On the Merits, Feb. 27, 1922.)

*(Syllabus by the Court.)*

1. **Appeal and error** ⬅➡359, 364, 386(1)—**District court clerk in country parish in absence of judge may grant order of appeal and fix amount of bond; appellant cannot be prejudiced by clerk's error in fixing return day or lodging the appeal within the minimum statutory delay; where appeal is made returnable in 9 instead of the statutory minimum of 15 days and is lodged on tenth day, it is within the delay fixed by law.**

The clerk of the district court, in a country parish, is authorized, in the absence of the judge from the parish and upon the showing of such absence by the oath of the litigant or his attorney, to grant an order of appeal, and, in certain cases fix the amount of the bond, and, within certain limits, the return day; and the litigant, seeking the appeal, cannot be prejudiced by his error in fixing the return day within the minimum delay fixed by the statute; nor is the appellant prejudiced by lodging the

appeal in this court within such delay, though the appellee need not answer or otherwise act until the delay has expired; and, where an appeal is made returnable in 9 days, instead of the minimum of 15 days, fixed by statute, and is lodged in this court on the tenth day following the order, it is within the delay fixed by law and also within the days of grace from the return day fixed by the clerk.

## On the Merits.

*(Additional Syllabus by Editorial Staff.)*

2. Mines and minerals ⬤⇒58—Where lessee was not bound, held lessor was not, and had the right to withdraw though consenting to correction of description in lease.

Where lessee bound himself to nothing in a lease, lessor was not bound whether or not the property was correctly or incorrectly described therein, and any subsequent change in the description could not have purged the agreement of its suspensive, potestative condition nor want of mutuality and consideration which vitiated it ab initio, and, even if lessor had consented to the correct description, he would still have the right to withdraw, as it did not bind lessee.

3. Mines and minerals ⬤⇒78(7)—Evidence held not to prove acceptance of check for payment of overdue rentals to prevent forfeiture for failure to drill.

Evidence *held* not to prove acceptance of a check for overdue rentals required to be paid to prevent forfeiture in case of failure to drill.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Action by Mrs. Bennie H. Wilder against Charles J. Jackson and others. Judgment for the defendants, and the plaintiff appeals. Motion to dismiss appeal denied, and judgment affirmed.

Barnette & Blanchard and Wilkinson, Lewis & Wilkinson, all of Shreveport, for appellant.

Blanchard, Goldstein & Walker, of Shreveport, for appellees Louisiana Oil Refining Corporation and Charles J. Jackson.

Thigpen & Herold and Milling & Pugh, all of Shreveport, for appellees Gilliland & Foster.

150 LA.—28

Hall & Bullock, of Shreveport, for appellees A. C. Glassell and K. E. Merren.

## On Motion to Dismiss Appeal.

MONROE, C. J. [1] Defendants, appellees, move to dismiss the appeal herein, on the grounds: (1) That there was no valid order of appeal or fixing of the bond, those functions having been discharged by the clerk, who was unauthorized thereto; (2) that the "so-called" order was signed on July 3, 1920, and made the appeal returnable on July 12, following; which was less than the 15 days required by law; (3) that the transcript was not lodged in this court within the delay thus fixed.

1. Act 75 of 1884 authorizes the clerk to grant an order of appeal and fix the amount of the bond, in the absence of the judge from the parish, upon a petition or application in which such absence is made to appear by the oath of the party or his attorney; and, as appears from the record, those requirements were complied with. The granting of such an order is a ministerial function which is within the power of the General Assembly to authorize the clerks of the district court, outside the parish of Orleans, to perform Const. art. 123.

2. The petition prays that an order for a devolutive appeal be granted, and that the amount of the bond and return day be fixed. The clerk, on July 3d, fixed the bond at $250 and made the appeal returnable on the second Monday (which fell on the 12th) of July. It should have been made returnable in "not less than 15 nor more than 60 days" from the date of the order (Act 106 of 1908); but it has been held that an appellant cannot be prejudiced by the error of the judge (and the same ruling applies to the clerk, acting in place of the judge), in fixing the return day of an appeal (Pearce v. District Atty., 49 La. Ann. 643, 21 South. 737; Lazarus v. Friedrichs, 125 La. 619, 51 South. 663; State

v. Augustus, 129 La. 617, 56 South. 551), and it has further been held that an appeal will not be dismissed because lodged in this court before the return day fixed by law, though the appellee need not answer or otherwise act until then (Ross v. Naff, 130 La. 594, 58 South. 348).

3. The transcript was lodged in this court on July 13, which was within the minimum delay fixed by law and also within the days of grace, from the return day as fixed by the clerk.

The motion to dismiss is therefore overruled.

### On the Merits.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J. On October 6, 1916, Charles J. Jackson, one of the defendants, executed a mineral lease on 340 acres of land in Claiborne parish to A. E. Wilder, who made a dation en paiement of said lease to his wife, plaintiff herein.

Petitioner alleges that through error the lands included in said lease were misdescribed and should have embraced certain other lands; that the defendant Jackson, after having consented to correct these errors by signing a corrected mineral lease, refused to do so, and repudiated said lease, although she and A. E. Wilder, her husband, had complied with all the terms and conditions of same by the payment of rentals therein mentioned, which were accepted by the said Jackson in full liquidation of the said rentals; but that, notwithstanding said payment, the said Jackson had leased said lands to the other defendants the Louisiana Oil Refining Corporation, Gilliland & Foster, and Merren & Glassell, and, by illegally doing so, had damaged petitioner to the value of said mineral leases, which she estimates at not less than one million dollars.

Petitioner alleges that the Louisiana Oil Refining Corporation and Gilliland & Foster have drilled large producing wells on said premises, and have extracted a large quantity of oil therefrom, and that she is entitled to an accounting for said oil and to be paid the value of same.

Petitioner also alleges, in the event it be held that through said error in the description in a portion of said property described in said mineral lease to the said A. E. Wilder, the said Louisiana Oil Refining Corporation and the said Merren & Glassell have secured a superior right to the minerals in and under said erroneously described land, then, in such event, the said Jackson is liable for the amount of the damages sustained by her.

Petitioner prays for judgment recognizing and declaring legal and valid the mineral lease of October 6, 1916, and placing her in possession of said lands or the minerals thereunder; and that the Louisiana Oil Refining Corporation and Gilliland & Foster be required to account for the oil extracted therefrom, and, in the alternative, if the mineral lease to the said Louisiana Oil Refining Corporation and the said Merren & Glassell be held valid and legal, then, and in such event, that the petitioner have judgment against the said Jackson in the sum of one million dollars, with legal interest from judicial demand.

The defendants the Louisiana Oil Refining Corporation, Gilliland & Foster, and Merren & Glassell set out in their answers that they acquired their respective leases on the faith of the public records, which showed a clear title in Jackson free from any lease. This defense is fully established by the record in this case, and plaintiff's demand as to these defendants is rejected. McDuffie v. Walker, 125 La. 152, 51 South. 100.

The defendant Jackson, in his answer, admits the execution of a mineral lease in favor of A. E. Wilder, and duly recorded in

the conveyance records of Claiborne parish, but denies that said instrument had any legal effect whatever, but was and is a nudum pactum, and admits the execution of a giving in payment by A. E. Wilder to plaintiff of a certain mineral lease, but denies that said lease or said giving in payment affected or affects any land of defendant.

Defendant avers that the aforesaid lease executed in favor of A. E. Wilder was without mutuality of obligation or consideration whatsoever, which lack and failure of consideration defendant specially pleads.

Defendant avers that on or about May 30, 1918, said A. E. Wilder came to defendant and admitted the forfeiture of the aforesaid lease by failure to drill on said land within the terms or pay the amount of money to prevent the forfeiture thereof as therein provided, and requested that defendant grant an extension of time until January 1, 1919, within which he should be permitted to pay such sum to prevent forfeiture of said lease, which defendant did without price or consideration whatsoever, and which lack and failure of consideration defendant specially pleads.

The lease from the defendant Jackson to A. E. Wilder of date October 6, 1916, contains the following provisions:

"First. The said lessee or his assigns, binds and obligates himself to commence operations for drilling a well, or wells, on said premises, *or on other leased premises* which he expects to acquire within a distance of five miles from Homer, La., within six months from this date, and to prosecute the drilling of said well with due diligence until the same is drilled to a depth of 2,600 feet, *and failing to do so, all of his rights hereunder shall cease and determine.*" (Italics ours.)

"Second. The lands herein leased being in unproven mineral territory, and being what is known as 'wildcat' territory, it is contemplated that the said lessee will acquire a number of leases in the vicinity of said lands, under leases similar to the contracts here made, with the right to commence operations for drilling a well on either of said leases, or on other leases taken by him, within a distance of five miles from Homer, La.; on the completion of the first well, as specified in paragraph one, the said lessee, his heirs or assigns shall within one year from the completion of the said first well begin operation for drilling a well on the said lands herein described, and prosecute the same with due diligence until the same is completed to a depth of 2,600 feet, unless oil or gas be found in paying quantities at a lesser depth, *and failing to do so all of his rights hereunder shall cease and determine.*" (Italics ours.)

"Third. In event the first well herein provided for is a producer of oil, gas or other minerals in paying quantities, and the said lessee commences operations for drilling a well on the lands herein described within one year period, the well so commenced on the said lands shall be completed with due diligence, and if the same produced oil, gas or other minerals, the said lessee shall commence operations for drilling another well on said premises within six months after the completion of the first well, *and failing to do so his rights hereunder shall cease.*" (Italics ours.)

"Sixth. It is especially understood and agreed that the lessee may prevent the forfeiture of this lease at the expiration of the said one year period, as provided in paragraphs two and three, on paying to the lessor the sum of one dollar per acre, and thereupon the said lease, with all of the rights hereunder, shall be extended for a period of one year from the expiration of said one year, with all the rights and privileges and *subject to all of the conditions herein specified,* and may so extend said lease for a period of three years, on the payment of said sum per acre annually in advance, which may be made to lessor direct, depositing to lessor's credit in Homer National Bank of Homer, La." (Italics ours.)

At the foot of this lease is the following extension:

"I, Charlie J. Jackson, the within lessor, do hereby consent and agree that the time for paying the one dollar per acre as expressed in the second line of paragraph six of the within lease be and the same is hereby extended to January 1, 1919; all other provisions of said lease shall be and remain unchanged. This the 25th day of May 1918.      [Signed] C. J. Jackson."

The lease and the extension in this case are identical with the leases and extensions passed upon by this court in the consolidated cases of Wilder v. Norman, 147 La. 413, 85 South. 59.

As in those cases, so in the present case, the lessee not only did not drill the well, but failed to make the payment of the rental on January 1, 1919.

In the Wilder v. Norman case, we said:

"It is obvious * * * that Wilder bound himself to nothing in the contract in question, and hence that the other party thereto was not bound. It is true that paragraph 1 of that contract begins with the statement that the lessee binds himself to drill a well within six months on some land within five miles of Homer (though not necessarily the land of the party with whom he was contracting) but the end of the paragraph provides an open door through which, construing the contract as a whole, the lessee readily escaped any obligation which might otherwise result from the statement, since it declares that 'failing to do so (i. e., failing to do what he apparently bound himself to do) all of his rights hereunder shall cease and determine.'

"And paragraph 2, which declares that, within one year from the completion of the first well (not a paying well, but merely the 'first' well), he shall 'begin operations for drilling a well on the said land herein described and prosecute the same,' etc., concludes in the same way, to-wit, 'and failing to do so, all ·of his rights hereunder shall cease and determine.'"

We held in the Wilder v. Norman case that the contract was based, as to the lessee, on a suspensive, potestative condition, and could not be enforced as to him. We also said in reference to the extension granted from May 26, 1918, to January 1, 1919:

"But that consent was purely voluntary and gratuitous, and does not purport to impose any obligation, reciprocal or otherwise, on the lessee. Conceding to it all the effect that may have been intended, the most that can be said is that it reinvested a contract that was originally unenforceable, because based, as to one of the parties, on a suspensive, potestative condition, with only the vitality that it was supposed originally to have possessed."

[2] As Wilder bound himself to nothing in the lease in this case, Jackson, the other party, was not bound, whether the property was correctly or incorrectly described therein; and it is clear that any subsequent change in the description of the property in said instrument could not have purged the agreement of its suspensive, potestative condition, nor of its want of mutuality and consideration which vitiated it ab initio.

It therefore follows, as a logical sequence, that, even if Jackson had consented to correct the description, he would have still retained the right to withdraw from the contract, as it was not binding upon Wilder, the lessee. However, we are not of the opinion that Jackson did so consent.

We held in the Wilder v. Norman case that where a supposed oil and gas lease purports to bind the lessee to drill a well upon the land of the lessor within a certain period, and provides that, "failing so to do, all of his rights hereunder shall cease and determine," and further provides that the lessee may prevent the forfeiture of the lease at the expiration of such period by making a certain payment, and where, in such case, the lessee fails to drill the well, or to make the payment, prior to the expiration of the period so fixed, or as extended on the same conditions, the lease becomes ipso facto forfeited, in accordance with its terms, and the lessee loses all of his rights thereunder, and he cannot prevent the forfeiture after it has occurred.

[3] We agree with the trial judge that plaintiff failed to prove that the defendant Jackson accepted his check for the rentals due January 1, 1919. This tender was not made until January 17, 1919, sixteen days after the rentals were due. Jackson testifies that while Wilder placed the check in his hands, he refused to accept same, and that he (defendant) offered to turn the check over to McKenzie, cashier of the Homer National Bank, who was present at the time, but that McKenzie refused to take it, and thereupon Jackson delivered the check to one of the clerks in the bank, stating to him that he did not want it, and with the request that the check be not deposited to

his account. The clerk received the check and put it back into the drawer where Wilder had his other checks.

Jackson's testimony is strongly corroborated by that of McKenzie, cashier of the Homer National Bank, who appeared as a witness on behalf of Jackson on the trial of the case.

A circumstance also strongly corroborative of the testimony of both Jackson and McKenzie is the fact that the discovery well in the Homer field came in, as shown by the testimony of Wilder, on January 14, 1919; the tender was made by him to Jackson on January 17, 1919, three days afterwards, and it is not at all probable that Jackson would have renewed this lease with Wilder at one dollar per acre at that date.

The tender of the check for these rentals came too late. We have repeatedly held that, if a certain payment is to be made on or before a certain date to prevent a forfeiture of an oil and gas lease, and the payment is not made on or before such date, a forfeiture results. Wilder v. Norman, 147 La. 414, 85 South. 59.

The judgment appealed from is therefore affirmed.