(43 South. 628.)

No. 16,445.

LUCKETT LAND & EMIGRATION COMPANY et al. v. BROWN.

In re BROWN.

(April 1, 1907. Rehearing Denied April 29, 1907.)

BROKERS—APPOINTMENT — ACCEPTANCE—SALE OF LAND—RIGHT TO COMMISSIONS.

Plaintiff sues defendant for commissions alleged to be due him as "selling agent" of a certain plantation. Defendant resists on the ground that the sending forward by himself of a power of attorney to plaintiff was a mere "offer" of an agency, and that before it was accepted he withdrew his lands from market; that in the power of attorney sent forward it was agreed and understood that no sale could or should be made until after the prospective buyer had a conference with him and had satisfied him as to his financial ability, and that he himself should be present at the sale and receive the cash and notes; that when the prospective buyer in this instance (with whom plaintiff, as agent, had entered into a written promise of sale of the land) presented himself at Natchez he did not put him (defendant) in default for nonexecution of the promise.

*Held*, the defenses urged are not well founded. The sending forward of the power of attorney was not the initial step in the matter of the agency. It was an acceptance, in fact, of plaintiff's offer to take the agency. If an acceptance was necessary, it was accepted by letter, and by action within the time that the situation of the parties and the nature of the contract showed it was the intention of the defendant to allow. Civ. Code, art. 1802. The notice of the withdrawal of the land from market was a recognition of the pre-existing agency of the plaintiffs. This withdrawal was after the plaintiff and the prospective buyer had started to meet defendant at Natchez. There was no necessity for putting defendant in default. He had himself put an end to the agency, and had placed it out of his power to carry out the promise of sale. He had withdrawn from the prospective purchaser an opportunity to show his good faith and ability to purchase. Civ. Code, art. 2040.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 5–8, 99.]

(Syllabus by the Court.)

Certiorari from Court of Appeal, Parish of Concordia.

Action by the Luckett Land & Emigration Company and others against George M. Brown, Jr. Judgment for plaintiff was affirmed by the Court of Appeal, and defendant applies for certiorari or writ of review. Affirmed.

Gustave Lemle, George M. Brown, Jr., and Samuel Lucius Elam, for applicant. John Dale, for respondents.

NICHOLLS, J. The following is the judgment of the Court of Appeal which has been brought up for review:

"The plaintiffs, real estate agents doing business in the state of Louisiana, sued the defendant, Geo. M. Brown, Jr., for $900, being 10 per

cent. of the purchase price of the Elba plantation in the parish of Concordia. They annex and make part of their petition an act of procuration from the defendant to them, which forms the basis of their demand. Judgment was against the defendant in the lower court, and he has appealed.

"The record is voluminous, made so by injecting into the case a lot of extraneous matter, innuendoes, and suspicions of fraud hardly permissible under the pleadings. Eliminate this, and we believe the case easily solved.

"The contract or power of attorney sued on is not reprobated by our system of law. The question is, was there such a contract? and, if so, did or could the defendant have abrogated the same during the period of 1½ months, the time limit specified in the written instrument itself? There can be no doubt about the power of attorney being given, because it was written and signed by the defendant himself. The contention that it was not promptly or seasonably accepted is without merit. The record shows that it was sent through the mail, and was received and acted on by the plaintiffs, and that it is an all-sufficient acceptance. The defendant must have known that the Luckett Land & Emigration Company was not a fake institution. He knew them in Natchez, and had once before empowered them to sell his property, and this second act of procuration was tantamount to a renewal of the one of three months' limit which had lapsed a short time before. He must have known of the capabilities of their firm in finding investors and purchasers of land in Mississippi and in this jurisdiction. The pleas of defense are somewhat contradictory or inconsistent, in this: If there was no contract by reason of the nonacceptance of plaintiffs, why, then, the letters and telegram to them withdrawing his property from market? If the defendant knew that there was no legal power of attorney, the necessity of notice to them by letter or otherwise of the fact of his determination not to sell his property was not at all apparent.

"We do not pretend to hold that under certain circumstances one could not withdraw his property from market and be relieved from the responsibility which arises under contracts of this nature; but we do believe that, in order to do so, perfect good faith with all parties concerned is a necessary prerequisite. We are bound to believe from the record that during this period of 1½ months the Elba plantation was never seriously withdrawn from market.

"The evidence (without being successfully contradicted) shows that plaintiffs faithfully sought to do that for which they had been accredited; that they were present, in person or by attorney, protesting against defendant's sale of the property for which they had found a purchaser. The action of the defendant shows a want of good faith with plaintiffs, and the obligation he assumed to them under his act of procuration to them must obtain. The exception that plaintiffs had not paid license is without merit. The penalty for nonpayment is fixed in the statute

itself, and it is for the tax collector to collect the license and the penalties as the law directs. We find no error in the judgment appealed from.

"It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs of both courts.

## "On Rehearing.

"After a careful re-examination of the evidence in this case, and considering the able briefs of plaintiffs and defendant, we believe the salient points governing the final determination of the cause can be called from the voluminous record and stated to be:

"First. Was the written instrument sued on ever completed into a contract, and, if so, what does it evidence, and what effect has it under the law?

"Second. If recognized under our law, was it susceptible of being revoked by either of the contracting parties before the expiration of the time limit therein expressed without damages?

"Third. What of the allegations and proof of bad faith?

"Considering the written instrument sued on, coupled with the testimony in the record touching the business relations had between the plaintiffs and defendant for some months immediately preceding the signing of the instrument, it is easy to determine its nature and effect. It must be governed by our codal provisions relative to mandate. The defendant, by his writing in said instrument, nominates. and appoints the Luckett Land & Emigration Company sole agents to 'offer for sale and to. sell' the Elba plantation situated in the parish of Concordia. In another place it refers to the duration of the 'time of this option,' and again it refers to the Luckett Land & Emigration Company 'finding buyer' for the property. Giving, then, effect to the document, coupled with the evidence as aforesaid, it can be nothing more than the appointment by Mr. Brown of the Luckett Land & Emigration Company as. his real estate agents or brokers, to find a purchaser for his plantation on terms therein stated and as embodied in the letter written by Mr. Brown inclosing the appointment to them in. Champaign, Ill.

"'The broker is he who is employed to negotiate a matter between two parties,' etc. Civ. Code, art. 3016.

"'The contract of mandate is completed only by the acceptance of the mandatory.' Civ. Code, art. 2988.

"There was no acceptance of the mandatory in the act itself, and we must now turn to the evidence to ascertain if there was an acceptance by any 'posterior act,' or a 'tacit' acceptance by acting under it. Civ. Code, art. 2989..

"The contract bearing defendant's signature was inclosed to plaintiff by him in a letter written, dated, and posted in the post office at Frogmore, La., on the 12th day of November, 1906. On November 14, 1903, plaintiffs acknowledged to Mr. Brown by letter the receipt of the letter of the 12th, but made no reference

to the inclosure, viz., the contract. This letter, however, clearly referred to the business in hand. It requested the defendant to get his 'abstract ready at once,' and that he would 'leave for Natchez on the 17th instant, with a party of prospective buyers.' If this letter was really written, and we have no reason to doubt it, it will require no stretch of the imagination to couple the 'prospective buyers' therein referred to with the sale of the Elba plantation mentioned in the act. So that we are of the opinion that, if the letter of the 14th of November could not be construed to be an express acceptance, it was at least a tacit acceptance, and the contract of mandate was complete. Finding, then, a contract not reprobated by our law, could it be annulled by either party without damage before the expiration of the time therein expressed?

"Our Code provides: 'The procuration expires by the revocation of the attorney, by the attorney's renunciation of the power and by the change of condition of the principal.' Civ. Code, art. 3027.

"Defendant's contention is that he timely withdrew his property from sale. Under the article of the Code just quoted it is entirely permissible for him to have done so, and possibly, if he had only withdrawn the property from sale even after a purchaser had been presented to him, he would have been obliged to reimburse the expenses of his agents up to the time of the withdrawal; but this we do not pretend to decide.

"Plaintiffs, on the other hand, contend that a purchaser had been found ready and willing to buy before there was a pretended withdrawal of the property from the market, and refers to the deposit of $500 in Champaign, Ill., by one Van Wegan as earnest money, or a forfeit in case he did not make good the purchase of the property as he had agreed with them.

"Defendant on his part urges the transaction in Champaign, Ill., to have been in bad faith and fraudulent, and done to extort from him commissions on the sale of the place. It is needless to say that allegations of fraud must be special and specific, and the proof must be accordingly. It is equally needless for us to quote authorities on this question. The burden of proof was assumed by the defendant when he alleged bad faith, and we believe the proof on this point is insufficient.

"On the contrary, the evidence assures us that there was no bona fide withdrawal of the property from the market. Plaintiffs, when they presented their purchaser to accept title on the terms and conditions as set forth in the act of procuration, as a matter of fact found the defendant in the act of selling the same property (the Elba plantation. in the parish of Concordia) to one Purvis, without any variance in terms and conditions. Again, defendant complains that he was not placed in default. plaintiffs were practically denied their rights in this particular. A $500 forfeit had been posted to guaranty their good faith. They were on the spot, ready and willing to accept title, which was denied them. We believe plaintiffs did their part, and think defendant should have done his.

"It is therefore ordered, adjudged, and decreed that the judgment of this court remain undisturbed."

In order to fully understand the issues between the parties, it will be well to make a statement as to certain facts which, though referred to, are not expressly recited in the judgment of the Court of Appeal.

On the 8th of September, 1903, the plaintiffs, from Champaign, Ill., wrote the following letter to the defendant:

"Dear Sir: Referring to your 970-acre tract, price $8,000, covered by option to Mr. Luckett of date Feb. 27, 1903, running three months from date, kindly inform me whether you would make lower price on this plantation.

"We inclose blank for renewal of option, and would state that, in order to make sales, we usually have to take in some property here. For this reason it becomes necessary for us to add to the price in order to get your money and our commissions. The option blank we inclose makes provision for this. In your option to Mr. Luckett you gave terms of $3,000 cash and balance on easy terms. From this we presume that, if balance can run three years at 6%, that would be satisfactory.

"Please have contract signed by two legal witnesses and return copy to us at earliest convenience and oblige. Also please let us know how this year's crop is on the place, and whether everything is in shape for showing the customers.

"Yours truly,
"[Signed] Luckett Land & Emigration Co.,
"Per J. B. Harris."

In defendant's application for a writ of review, his counsel says:

"The defendant concluded not to send the option referred to and inclosed in the letter. About two weeks after the receipt of the letter of September 8th, one of the plaintiffs came to Natchez and asked why the option had not been signed and returned, and was informed by Mr. Brown that he would not consent that plaintiffs should undertake to sell the property without its being expressly understood that the prospective buyer should be brought to Natchez and satisfy him that he was able to purchase. The defendant stated at the time to plaintiffs his reason for insisting on this condition was that he did not care to be put to any further expense in carrying proposed buyers to the plantation and entertaining them, when they were not able to purchase, even if the place suited them. Plaintiffs then stated this was agreeable to them."

In this situation of affairs the defendant, on November 12, 1903, wrote the plaintiffs the following letter, viz.:

"Frogmore P. O., La., Nov. 12, 1903.
"Luckett Land & Emigration Co., Champaign, Ill.

"Gentlemen: Enclosed please find your option blanks filled out and signed as directed. I limited the option to one and one-half months because I wish to close the matter before January 1, 1904. In talking to purchaser you can say most of the 300 acres in cultivation has been cleared up in past three years. The land runs 50 pounds lint, and, as the cotton is now bringing 11 cents, the rate is $5.50 an acre. If purchaser pays $3,000 cash, he can pay balance in 12 $500 notes, due in 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 years, even payments at 6%, if he wont give 7%. Every house on the place is filled with people, all of whom like the place and will remain as long as they are permitted. I have a number of more applications, and will have to build more houses, and have some of the lumber on the ground now. *Let's get the men down here and close out this matter at once.* [Italics ours.] Of course you get 10% of the $9,000 as specified in the option. Address me at Frogmore, La.

"Very cordially yours,
"[Signed]   George M. Brown, Jr."

The option inclosed in the letter reads as follows:

"State of Louisiana, Parish of Concordia.

"Know all men by these presents, that for and in consideration of the sum of one dollar this day to me cash in hand paid by the Luckett Land & Emigration Company (not incorporated), of the city of Natchez, state of Mississippi, and of the city of Champaign, state of Illinois, I, George M. Brown, Jr., of the city of Natchez, state of Mississippi, do hereby appoint for the period of one and one-half months from the date hereof the above-named Luckett Land & Emigration Company my sole agent during said period to offer for sale and to sell that certain plantation known as 'Elba,' situated in the parish of Concordia and state of Louisiana, and more particularly described, as follows, viz.: [Describing it.] Terms as follows: $3,000 cash, and balance in 12 years, at 6%, if that length of time is wished by purchaser.

"And it is further agreed that, if the said lands shall be sold by the said Luckett Land & Emigration Company within the above specified time, they shall be entitled to and shall receive a commission of 10% upon the full amount for which said sale shall be·made; and, should a sale of said property be made by me or any one else during the time of this option, said Luckett Land & Emigration Company shall be entitled to and receive their commission in like manner as if said sale had been made by them.

"I hereby certify that I have a good and sufficient title to the land described herein, and agree to have an abstract of title prepared and placed in their hands at once, in order that there may be no delay in closing the deal when the Luckett Land & Emigration Company find a buyer for the property.

"It is further understood that there shall be no changes in price or terms without my full consent given in writing.

"[Signed]   George M. Brown, Jr.
"Witnesses:   E. H. Fleming.
        "H. F. Beard."

The letter of the 12th, inclosing the option, must be read into the option. The clause in the letter, "Let's get the men down here and close out this matter at once," read in connection with the testimony of defendant, Brown, to the effect "that all prospective purchasers had to be first presented to him at Natchez, Miss., and satisfy him as to their ability to purchase," is convincing that the only power or authority conferred on plaintiffs by defendant was for plaintiffs to find a purchaser and present him to defendant at Natchez. If the prospective purchaser was satisfactory, and a sale was made to him, then plaintiffs were to be paid their commission.

The above letter of November 12, 1903, with inclosure, was mailed at Frogmore, La., on November 12, 1903, and was received by plaintiffs at Champaign, Ill., on the morning of November 14, 1903. Defendant, Brown, testified that after mailing this letter he went to the post office repeatedly, and, not hearing from plaintiffs, he concluded that, as he had raised the price $1,000, instead of lowering it, as requested by plaintiffs in their letter of September 8th, herein quoted in full, plaintiffs were not satisfied, and he thereupon, on November 17, 1903, wired as follows:

"Natchez, Miss. November 17th, 1903.
"Luckett Land & Emigration Co., Champaign, Ill. I hereby withdraw Elba plantation from the market.
"[Signed]   George M. Brown, Jr."

On November 19, 1903, one of the plaintiffs met the father of defendant in Natchez, and

asked him if his son was in town, as he desired to see him on business. The father communicated this meeting to the son, and the defendant thereupon wrote plaintiffs, confirming his telegram of November 17th, again withdrawing the property. This letter was delivered to plaintiffs in Natchez on the night of the 19th. On the 20th or 21st defendant entered into an agreement with one J. G. Purvis to sell him his property for $9,000, $1,000 cash and balance in nine years. When the sale was about to be signed, on November 23, 1906, plaintiffs, through their attorney, notified defendant that they had on November 16th, sold the property to Mr. Van Wegan, at Champaign, Ill., for $3,000 cash, and the balance to be evidenced by 12 notes, payable in equal installments, bearing 6 per cent. interest. Upon defendant refusing to make deed to Van Wegan, plaintiffs made deed to him, and placed it of record. Defendant having made deed · to Mr. Purvis, who went into possession of the property, the plaintiffs instituted the present suit to recover $900 alleged commissions due them.

It seems that, in addition *to* sending to plaintiffs the telegram referred to, defendant wrote them a letter to the same effect. On receipt of defendant's letter of the 12th of November at Champaign, plaintiff wrote and mailed to the defendant the following letter:

"Champaign, Ill., November 14th, 1903.
"Mr. Geo. M. Brown, Jr., Frogmore, La.

"Dear Friend: Yours 12th inst. received. I believe we have a buyer for the place, and would request that you get your abstract ready at once. I will leave for Natchez on the 17th instant, with a party of prospective buyers, and will see you soon after my arrival.

"With best wishes, I am yours truly," etc.

The plaintiffs, after mailing this letter, left Champaign, Ill., with one Van Wegan (who was a prospective purchaser of defendant's plantation), in order to meet the defendant with respect to the purchase. The telegram of the defendant to the plaintiffs withdrawing the property from market, and his letter to the same effect, reached Champaign after plaintiff and Van Wegan had started for Natchez. The letter was, however, forwarded or sent back from Champaign to the plaintiffs at Natchez, and was received by them there on the 19th of November.

The defendant, it will be seen, resists the demand on the ground that plaintiffs had never accepted the agency and that the offer of the same was withdrawn before acceptance, and on the further ground that the plaintiffs were without authority to make any agreement for the sale of the property which would bind him; that, under the verbal agreement or understanding with them, the prospective buyers were required to come to Natchez; that the agreement for a sale had to be made between the prospective purchaser and himself. He also denies that the agreement which plaintiffs alleged they had made with Van Wegan at Champaign was actually made, but, such as it was, was got up for the purpose of extorting commissions from him.

Defendant in the defense which he makes, regards the forwarding by him to the plaintiffs on the 12th of November of the power of attorney to sell as the initial step in the matter of the agency; but he overlooks the fact that the plaintiffs had themselves solicited the agency, and the forwarding of the paper was rather an acceptance by the defendant of their offer ·to take the same than an original proposition by the defendant to accept the agency. Defendant himself says that before sending on the power he had· had a conversation with one of the plaintiffs, and he had told him that "it was agreeable to him."

The letter written to the defendant by the plaintiffs from Champaign, acknowledging receipt of his letter of the 12th of November, was not as direct or specific as it ought to

have been, but, in view of the former relations between the parties, could not have failed to convey to defendant knowledge of their acceptance of the agency, if such an acceptance was then required. Defendant says he did not receive the letter, but actual receipt of the letter was not necessary in the premises. Besides this, plaintiffs acted upon the power when they negotiated for the sale of the property with Van Wegan and when they left with him for Natchez. We think the telegram which defendant sent to the plaintiffs, and the letters to them, withdrawing his property "for sale from the market," were recognitive of a pre-existing agency in the plaintiffs for such sale. He substantially said to them:

"You are relieved from this time on from further consideration of a sale of the property."

We now direct our attention to the proposition, advanced by the defendant, that plaintiffs did not put him in default, and that plaintiffs had no authority to make any agreement binding on him, and none could be made until after he himself had conferred with, and entered into arrangements with, the proposed purchaser, and had satisfied himself as to his financial ability, inasmuch as the arrangement was that he himself should receive the cash and notes to be received from the sale. We scarcely think defendant can urge that he was not put in default, when he had himself peremptorily withdrawn the property from the market, and had taken control of the matter himself. We think the question of the good faith and the financial ability of Van Wegan, and his ability and willingness to comply with his promise to buy, are not properly issues in this case. Defendant himself declined to put the plaintiffs and Van Wegan to the test on those subjects, and cut them off from the opportunity of doing so.

We concur in the conclusions reached by the District Court and the Court of Appeal in this case. Levistones v. Landreaux, 6 La. Ann. 26; Hornbeck v. Gilmer, 110 La. 507, 34 South. 651.

The judgment brought up for review is therefore affirmed.