By the WHOLE COURT.
OVERTON, J.
Plaintiff executed an instrument which, upon its face, purports to convey to defendant all of the oil and gas in and under 557 acres of land located in the parish of Ouachita, with the right of ingress and egress, at all times, for the purpose of drilling, mining, and operating for gas, oil, or water, and with the right to erect storage tanks and other necessary structures, and to lay all pipes necessary for the production, mining, and transportation of the minerals named. The contract also confers the right on defendant to use such quantity of the oil, gas, and water, that it may withdraw from *163 the land, as is found necessary for operations, and to cut and use such wood on the land as is not fit for sawing, for fuel purposes, in drilling wells. It also recognizes the right in defendant to remove at any time all machinery, fixtures, and improvements placed on the land by it. The consideration for the alleged sale is the drilling of a well in quest of oil and gas in that locality, one-eighth of all oil produced and saved on the property, and, if gas should be found, the payment to plaintiff of $200 per year, payable quarterly, for the product of each well, while the same is being used off the premises.- The contract was made subject to the following conditions, to wit:
“In ease operations for either the drilling of a well for oil or gas, is not commenced and prosecuted with due diligence within - from this date, then this grant shall immediately become null and’void.”
“In case the parties of the second part should bore and discover either oil or gas, then in that event this grant, incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil or gas may he produced in paying quantities thereon.”
The above instrument was executed on March 15, 1917, and was signed by plaintiff, alone. At the time of its execution the land was situated in what was considered “wildcat” territory. In fact, the nearest well to it was about two miles distant. Within ten 'days after the execution of the instrument defendant took possession of the property, erected' a derrick thereon, and, with the knowledge and acquiescence of plaintiff, drilled a well on the property, completing the well in 60 days from the date of taking possession. The well did not produce oil, but it produced gas in quantities, which, due in large part to the market that defendant was largely instrumental in creating, has paid it handsomely. When the well was completed, defendant tendered to plaintiff the consideration stipulated in the contract for gas used ioff the premises, but plaintiff refused to accept the money, as appears from his answer to the following questions propounded to him while a witness on the stand, to wit:
“<J. I will ask you if it is not a fact that before the defendant company sold any gas out of the well on your land that it made you a tender of $50 to cover the first quarter, under the lease contract they held with you, and that -you refused it?
“A. I don’t know of my own knowledge whether they sold any from this well or whether they had it connected up, or not. I don’t know.
“Q. You refused to receive it?
“A. I refused to receive the check; yes, sir^
“Q. And not because of the fact that it was not timely presented to you?
“A. I refused it for the fact I didn’t consider it sufficient consideration.
“Q. It was the amount named in the contract that they offered you, was it not?
“A. I think so,
“Q. Then you refused it because you weren’t satisfied with the contract?
“A. Yes, sir.
“Q. And you didn’t expect to stand on the contract?
“A. Didn’t know the value of a gas well at the time I signed the contract.
“Q. I asked you if it was not a fact that you refused to take the amount called for by the contract when tendered to you, and within the time fixed in the contract, by the defendant, because you became dissatisfied with the contract, and didn’t expect to stand on it?
“A. Yes, sir; because I signed the lease in error, not knowing the value of a gas well. «
“Q. Then you testified that the defendant company had not paid you anything subsequent to the drilling of the well, on account of the gas; it was only because you would not accept anything, was it not?
“A. That’s correct, for reasons stated before.” •
Being dissatisfied with the contract, as indicated by the above answers, and considering it illegal, plaintiff instituted this suit to have it annulled, and in the event it should be held that he has no legal ground to annul it, then to obtain such equitable relief as the facts alleged and those established on the trial may justify. The grounds on which the *165 lease is attached are numerous, and will be mentioned as they are considered.
The grounds of attack that may be first considered are that the contract is potestative in character, lacks mutuality, is not signed by the defendant, and that there has been an utter failure of consideration in money or other thing of value.
[1] Viewing the contract, for the moment, as valid from the time plaintiff signed and delivered it, in order to ascertain its nature, it may be said that, while it purports on its face to be a sale of the oil and g.as in and under the land, and is expressly, by a stipulation in it, declared to be such, yet the law regards it as a mere conveyance or grant of the right to mine for those minerals, and to reduce them to possession and ownership, and not as a sale of them in their natural state, beneath the surface. Frost-Johnson Lumber Co. v. Sailing’s Heirs, on second rehearing, 150 La. 855, 91 South. 207. Therefore the contract will be so viewed in ascertaining its validity.
[2, 3] It is clear that the contract makes it depend on defendant’s will alone whether or not it should be executed by exploiting the land for gas and oil. It was therefore potestative, and contains the same potestative condition, word for word, as the one contained in the contract -that was under consideration in the case of McClendon v. Busch-Everett Co., 138 La. 722, 70 South. 781. The drilling by defendant and the payment of the royalties stipulated was the real consideration for the contract. Hence, as its execution was dependent on defendant’s will alone for the reason mentioned, and for the additional reason that it was even optional with defendant to drill on plaintiff’s property or on adjoining property, there was in reality no contract at all when the instrument, purporting to be one, was delivered. Caddo Oil & Mining Co. v. Producers’ Oil Co., 134 La. 701, 64 South. 684. And, since the contract should have been signed by both plaintiff and defendant, but was not signed by the latter, there was for that reason also no contract at the time. However, as plaintiff permitted defendant to, take possession of the property, and to spend a large amount of money in drilling a well, he should not, after defendant has thus assumed the obligations of the instrument, and has discharged, in part, its terms by developing the property successfully for gas, be permitted to repudiate the obligations of the instrument. By delivering the contract to defendant, such as it was, and by raising no objection to the development of the property under it, though he had knowledge that the property was being developed, he sanctioned the course pursued, and should not now be permitted to annul the contract to the latter’s injury. If he' were permitted to do so, the advantages to be derived by him would be considerable, and the injury to the defendant would be great. To annul the contract now would be opposed to both law and equity.
In principle, the case of McClendon v. Busch-Everett Co., and Caddo Oil & Mining Co. v. Producers’ Oil Co., both cited supra, are applicable to the phases of this case now under consideration. They are directly pertinent in so far as pertains to the attack on the contract for lack of mutuality, and because it contains potestative conditions. The mere fact that in those cases the grantors of the right accepted the royalties after performance of the obligations to drill, when in the case at bar the grantor refused payment, when tendered, after permitting the property to be partially developed, is not sufficient to make the doctrine of those cases inapplicable to the present case. And the same reasons which, in those cases, influenced the rejection of the theory that contracts of this description may be annulled, .after compliance by the grantee, because of potestative conditions, are equally applicable in rejecting the theory that they may be. annulled by the grantor, after performance, because signed alone by. the *167 latter. In each of those cases, and in the present one, it is the fact that the grantee as.sumed the obligations of the contract due the grantor by discharging them with the latter’s knowledge and sanction that prevents the annulment of the contract on the grounds above urged. Plaintiff cites Raines v. Dunsom, 145 La. 526, 82 South. 690, and Harang v. Ragan, 134 La. 206, 63 South. 875, in support of his contention on the present phase of the case. However, the facts of those eases clearly differentiate them from that particular phase of this case now under consideration, and are not at all in conflict with the views here expressed.
In the event of an unfavorable ruling on the grounds of attack above considered, plaintiff contends that the contract should be annulled because defendant failed to drill for oil, but instead drilled for gas, thus deceiving him in that respect.
[4, 5] At the time plaintiff signed the instrument in question he knew that the defendant ' corporation was organized for the purpose of handling and was prepared to handle gas as well as oil; that it had been ••a successful bidder for a gas franchise granted by the city of Monroe, to obtain which it had deposited $10,000 as a guaranty that it would pipe nátural gas to that city; and, notwithstanding this. knowledge, which he concedes to have possessed, he' signed in favor of a company thus organized the instrument in question, which provides, as we have seen, that:
“In case the-parties of the second part (defendant) should bore and discover either oil or gas, then in that event this grant, incumbrance or conveyance, shall be in full force and effect for twenty-five years from the time ■of the discovery of said product, and as much longer as oil or gas may be produced in paying quantities thereon.”
We have quoted the above for the purpose ■of showing that the parties not only had in view the discovery of both oil and gas, but gave, unmistakably, to the discovery of either the same effect in respect to the continuance of the contract. We have said what we have, immediately preceding the above quotation, for the purpose of showing that plaintiff, even outside of- the clear terms of the instrument, and prior to the signing thereof, possessed sufficient information to .put him on guard that gas was a desirable product for defendant to discover, even had there been reason to question it. As a matter of fact, the record discloses that the discovery of either gas or oil in paying quantities would have been satisfactory to defendant, as might be assumed. All that defendant did in its quest was to pursue the usual method of drilling a well, and it is fair to presume, in the absence of any evidence to the contrary, that it drilled it for the purpose of discovering and marketing either oil or gas. In its quest it discovered gas in paying quantities. This satisfied the terms of the contract. Nor do we think, as contended by plaintiff, that defendant, through its officers, took advantage of the former’s lack of knowledge of the value of the right to explore for gas to impose upon him, in so far as the contract relates to that mineral, in fixing the consideration of $200 a year for each well from which gas is sold or used off the premises. While defendant undoubtedly possessed a better knowledge than plaintiff of the value of oil and gas, yet the latter, it appears, is a business man of some years’ experience, and at the time the contract was signed was interested in several oil and gas companies. It is not unusual, it seems, in such contracts, to fix the consideration to be paid in the event of the discovery of gas, and of its use or sale off the premises, at $200 a year. Under the circumstances, we conclude, after a careful consideration of the evidence, that it does not admit of a ruling that defendant practiced the deception alleged, or any deception at all. Hence no relief can *169 be granted plaintiff on that ground. It is not unlikely that plaintiff was disappointed at the outcome. In fact, he was, but we do not think a deception was practiced on him.
[6] Still pleading in the alternative, plaintiff contends that the contract should be annulled because of the failure of defendant to progressively driE or develop the lands embraced in it, and he points out that these lands consist of two tracts, a quarter of a mEe apart at the nearest point, and that a well has been driEed only on one of them, although two years have intervened between its completion and the institution of this suit.
Defendant does not deny, but concedes, that the general rule is that there is an implied obligation on the part of the lessee in oE and gas leases to reasonably develop the property for the common advantage of the parties to such contracts, but takes the position that it has been prevented from developing it further by plaintiff’s own acts and attitude. Defendant is correct. From the time of the completion of the well, even before any gas was sold or used off the prem-' ises, plaintiff, in effect, repudiated the contract by refusing to accept the tender of payment that was made' for the first quarter, and repudiated it by his expressions showing dissatisfaction with the contract as his reason for refusing payment. He has since consistently adhered to that position. Under such circumstances, with a prospective suit to annul that instrument hanging over defendant, plaintiff could not expect the former to make further expenditures to develop either tract, until, at least, a settlement of their differences could be effected. The situation was brought about by plaintiff’s own attitude and fault, and he cannot be permitted to escape, to the injury of defendant, the consequences thereof; nor is the situation changed by the fact that during that time defendant used and sold gas produced from the well that was driEed. The fact that he did so use the gas and oil produced did not require him to make further expenditures to develop the property, at least, until a settlement of the serious differences mentioned had been effected, and it became an ascertained fact that he could proceed safely.
[7] It is next contended that the price of $200 a year for each gas well is not a serious consideration; that in this instance the gas well produces from 20,000,000 to 30,0(50,000 feet of gas per day; that the price is vile; that plaintiff was misled into signing the instrument; that defendant, through its officers, was familiar with the business, and that plaintiff was not familiar with it, which enabled defendant to mislead him; and, further, that the transaction should be annulled for lesion beyond moiety.
• Plaintiff here apparently viéws the matter as if it were a known fact, when the contract was signed by .him, that there was gas in large quantities under the land, and that what he was really conveying was a gas well of considerable value. As a matter of fact, all that was granted was the right, subject to certain conditions, to explore for gas and oil, and reduce them to possession and ownership, and the rights necessary , to accomplish the purposes of the contract.
In so far as relates to the deception alleged, we have considered that phase of the case, and have found that there was none.
Defendant’s acquisition .amounted to nothing more than an opportunity, fraught with uncertainty, of realizing, after a considerable expenditure of money, the hope of discovering oil or gas; and, under the circumstances, we are unable to hold that the consideration moving to plaintiff was so inadequate as to justify the annulment of the contract.
We do not think that the contract is such a one as may be annulled for lesion beyond moiety. Properly speaking, the contract is not one of sale. Persons of full age are relieved for lesion only in partitions, and in *171 the sale of immovable property. O. O. arts. 1861, 1862, 1863.
While we appreciate that the contract is a hard one for plaintiff, yet we do not fepl that we are authorized, under the law, or under the prayer for equitable relief, to annul it.
For the reasons assigned, the judgment is affirmed, at appellant’s costs.
O’NIBLL, J., being absent from the state, takes no part in the decision of the case.