No. 2095

Second Circuit

————

JOHNSON v. THOMAS

————

(November 6, 1926. Opinion and Decree.)
(December 11, 1926. Rehearing Refused.)

————

*(Syllabus by the Editor)*

1. **Louisiana Digest—Evidence—Par. 266.**

The stipulation in an oil lease that "the vendor and vendees each shall remain owners of a one-half interest of all the minerals and mineral rights and privileges in and to the said tract" is not ambiguous and parol testimony to explain is, therefore, not admissible.

2. **Louisiana Digest — Mineral Rights — Par. 4, 5.**

A reservation in the sale of land, of the mineral rights, is a reservation not of one-half of the minerals, but a one-half interest in the right to explore for them and reduce them to possession.

3. **Louisiana Digest — Mineral Rights — Par. 6, 9, 10.**

A stipulation in an oil lease that in case the lessee failed to begin operations within a certain time he should have a twelve months' extension upon payment of $1000 is part of the consideration of the lease and each of the lessors has the same interest in this payment as in the original sum paid.

Appeal from the Third Judicial District Court of Louisiana, Parish of Claiborne. Hon. J. E. Reynolds, Judge.

Action by A. R. Johnson against R. B. Thomas and F. S. Thomas.

There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

Nash Johnson, of Shreveport; T. H. McEachern, of Homer, attorneys for plaintiff, appellee.

L. K. Watkins, of Minden, attorney for defendants, appellants.

ODOM, J. On December 3, 1918, A. R. Johnson, the plaintiff, sold to the defendants a tract of land situated in the parish of Claiborne.

The land was sold subject to a mineral lease which had been previously granted by Johnson to A. E. Wilder.

The deed from Johnson to the defendants expressly stipulated that all amounts due under said lease up to January 1, 1919, should be paid to Johnson, the vendor, and that in case said lease was continued under the recitals therein contained—

"all amounts coming due thereunder after January 1, 1919, shall be payable, one-half to the vendor and one-half to the vendees herein; further still, that in the event said lease shall be annulled by limitation or otherwise, then the mineral rights on and in the said tract of land shall revert one-half to the vendor and one-half to the vendees herein. It being the intent of this act that outside of the amounts due on said lease up to January 1, 1919, that the vendor and vendees thereafter shall be and remain owners each of a one-half interest in and to all the minerals and mineral rights and privileges in and to the said tract of land."

The lease from Johnson to Wilder seems to have expired by limitation after Johnson sold the land to the defendants.

At the expiration of said lease, the mineral rights in said land, under the terms of the deed, reverted, one-half to Johnson and one-half to defendants.

Thereafter, on December 17, 1919, Johnson and the defendants executed a joint mineral lease on forty acres of the land to W. B. Beach for a cash consideration of $14,000.00, the lease covering a period of five years from its date, with the stipulation, however, that the drilling of a well thereon should be begun by March 17, 1920, otherwise the lease contract should terminate as to all parties, unless the lessee, on or before that date, should pay or tender to the lessors the sum of $1000.00—

"which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

The lessee, it seems, did not begin the drilling of a well on said land by March 17, 1920. Previous to that date, however, he paid to defendants the sum of $1000.00 in order to continue the lease for an additional twelve months.

As stated, the lessee paid a cash consideration of $14,000.00 for the lease, which amount was divided equally between Johnson, who received $7000.00, and the two defendants, who received $7000.00.

The $1000.00 which was paid by the lessee for the extension of the lease was paid to the two defendants.

Johnson, the plaintiff, made demand upon them for $500.00, one-half of said amount, and upon their refusal to pay him this amount he brought this suit.

Defendants, in answer, admitted the receipt of the $1000.00 paid by the lessee for an extension of the lease and admitted their refusal to pay one-half thereof to Johnson, and set up as their reason for such refusal that Johnson's reservation of the minerals and mineral rights in said land—

"only reserved to the plaintiff an interest in the minerals without conveying any rights whatever to rents and rentals in future leases on the property."

And they further alleged that it was the understanding between the parties that Johnson reserved a one-half interest in the minerals and not a one-half interest in the rents and rentals.

And, in reconvention, defendants alleged that the $7000.00, one-half the amount of the original consideration for the lease, was paid to Johnson through error, and they reconvene for that amount.

There was judgment in the District Court in favor of plaintiff for $500.00 and costs and rejecting defendants' demands in reconvention; from which judgment the defendants have appealed.

## OPINION

Counsel for defendants argues that the reservation made by Johnson of the minerals and mineral rights in and under the land is ambiguous and that parol testimony was admissible to show the true intent of the parties.

Parol testimony on this point was admitted by the lower court over the objection of plaintiff.

We do not detect the slightest ambiguity in the reservation which Johnson made in the deed to defendants.

Said reservation is as follows:

"That in the event said lease (that is, the old lease from Johnson ·to Wilder which subsequently expired by limitation and which is not involved in this suit) shall be annulled by limitation or otherwise, then the mineral rights on and in the said tract of land shall revert one-half to the vendor and one-half to the vendees herein. It being the intent of this act that outside of the amounts due on said lease (the old lease) up to January 1, 1919, that the vendor and vendees thereafter shall be and remain owners each of a one-half interest in and to all the minerals and mineral rights and privileges in and to the said tract of land."

The sum and substance of counsel's contention is that the above reservation left Johnson the owner of a half interest in the minerals under the surface of the land, and that in case the lessee found oil or gas one-half of the amount brought to the surface would belong to him.

If counsel's position be correct, then Johnson's reservation amounted to nothing, for it is settled jurisprudence that the owner of land does not own the fugitive minerals under its surface separate and apart from the land and that all he owns is the right to explore for them and reduce them to possession and that ownership of them is acquired only when they are reduced to possession; and, further, that a sale of land with a reservation of the minerals gives the owner the right to explore for such minerals and that such right can be made the lawful subject of barter and sale.

In the recent case of Bodcaw Lumber Co. vs. Cox, et al., 159 La. 810 (106 South. 313), the court quoted the ·following from the case of Frost-Johnson Lumber Co. vs. Sallings Heirs, 150 La.· 863, 91 South. 207, to-wit:

"We may hold, and we do hold, that, no matter what the intention of the parties be, the owner of lands cannot convey or reserve the ownership of the oils, gases, and waters therein apart from the land in which they lie; and we so hold, because the owner himself has no absolute property in such oils, gases, and waters, but only the right to draw them through the soil and thereby become owner of them."

And the following from the case of Lieber vs. Ouachita Natural Gas & Oil Co., 153 La. 160 (95 South. 538), to-wit:

"In order to ascertain its nature, it may be said that while it purports on its face to be a sale of the oil and gas in and under the land, and is expressly, by a stipulation in it, declared to be such, yet the law regards it as a mere conveyance or grant of the right to mine for those minerals, and to reduce them to possession and ownership, and not as a sale of them in their natural state, beneath the surface."

After quoting from the Frost-Johnson case, supra, the court said:

"The doctrine thus stated had been announced in eight previous cases and has been reaffirmed in at least four cases since the Frost-Johnson case. * * * But it does not follow, because of the principle so firmly settled, that the right to mine for the minerals named and to reduce them to possession cannot be made the lawful subject of barter and sale. In all cases to which we have referred, and in which it was held that oil and gas beneath the surface is not subject to ownership, as corporeal property, it was plainly and distinctly held that the grant or reservation of the oils and gases carried with it the right to extract such minerals from the soil; that such right was an incorporeal right—a real right or servitude."

And, after quoting from the Lieber case, supra, the court said, in the Bodcaw Lumber case:

"From which it follows that, when the plaintiff reserved the oil, gas and minerals under the land sold, it reserved the right to mine for such minerals and to reduce them to possession."

In the case at bar, Johnson sold the land to defendants and reserved—

"one-half interest in all the minerals and mineral rights and privileges in and to said tract of land."

In doing so, he reserved, according to the settled jurisprudence of this state, not one-half the minerals, as contended by counsel, but a one-half interest in the right to explore for them and reduce them to possession; and, under the jurisprudence, that right was a lawful subject for barter and sale.

Subsequently he, and the defendants sold this right to W. B. Beach for $14,000.00. As Johnson owned one-half interest in this right he was entitled to one-half the proceeds of the sale.

The sale of this right was made with the express stipulation that the lessee or vendee should have five years in which to reduce the minerals to possession, but in case he failed to begin operations by a certain time he should pay an additional consideration of $1000.00 for each twelve months' extension. This $1000.00, when paid, was part of the consideration for the lease. Johnson had the same interest in the payment as he had in the original sum paid. He was entitled to one-half of it.

The reservation made by Johnson being without ambiguity, parol testimony was inadmissible to show the intent of the parties.

However, the testimony was admitted subject to the objection and is in the record. But, even if this testimony be considered, defendants have not made out their case.

Mr. R. B. Thomas, one of the defendants, testified that he had always held the opinion that a reservation of the minerals carried with it no right to the rentals and that he had so stated to Mr. Johnson, but that the lawyers advised him to the contrary, and upon their advice he paid Mr. Johnson one-half of the $14,000.00. He did not say, however, that Mr. Johnson, at any time, agreed that the defendant and his co-defendant should have the rentals. His refusal now to pay the $500.00 claimed in this suit is based upon his opinion that plaintiff is not entitled to it, although he has been advised to the contrary by attorneys.

Finding no error in the judgment, it is accordingly affirmed with costs.

REYNOLDS, J., recused.