148 So. 32

SLACK et al. v. RIGGS et al.

No. 31447.

March 27, 1933.

Rehearing Denied May 1, 1933.

White, Holloman & White, of Alexandria, and Burford & White, of Shreveport, for appellants.

John T. Campbell and Coleman Lindsey, both of Minden, for appellee S. H. Riggs and others.

ROGERS, Justice.

On June 7, 1930, B. L. Slack, as owner, and the Southern Production Corporation, as lessee, of a certain described quarter section of land in Webster parish, brought this suit against S. H. Riggs, alleging that he was trespassing upon plaintiff's property by drilling thereon for oil and gas. Plaintiffs prayed for a temporary restraining order which, however, was not issued, and for a preliminary injunction which, after hearing, was issued, restraining Riggs from proceeding further with his drilling operations.

Riggs, after joining issue with plaintiffs, called in warranty, as his lessors, the Louisiana & Arkansas Railway Company and the Bodcaw Lumber Company of Louisiana, Inc., and he prayed, among other things, for judgment against them for $11,069.08 as the amount of costs and expenses incurred by him in his drilling operations up to the time the preliminary injunction was issued.

The railway company and the lumber company answered denying plaintiff's ownership and setting up title to the land in themselves. The companies admitted that Riggs was drilling on the property, but denied any responsibility therefor. In the alternative, they pleaded their good faith, alleging that Riggs had no lease on the property because the lease contract had not been actually delivered, and that the agreement contained potestative and resolutory conditions, the happening of which were necessary and which had not happened.

The court below rendered a judgment in favor of the plaintiffs B. L. Slack and the Southern Production Corporation perpetuating the preliminary injunction against the defendant Riggs, and in favor of Riggs for $7,341.23, with interest, as damages against his warrantors, the Louisiana & Arkansas Railway Company and the Bodcaw Lumber Com-

pany of Louisiana, Inc. From this judgment the warrantors have appealed.

The appellants make no question of the plaintiffs' ownership of the land in dispute, and the only issue tendered by appellants on the appeal is the correctness vel non of that part of the judgment appealed from awarding damages against them, as warrantors, in favor of the defendant, S. H. Riggs.

On May 23, 1930, an oil and gas lease from the Louisiana & Arkansas Railway Company and the Bodcaw Lumber Company of Louisiana, Inc., to the defendant, S. H. Riggs, was executed in triplicate; the moving cause of the contract appearing to be the beginning of drilling operations within 45 days from the date of the contract, and, in the event the well should produce oil or gas in paying quantities, the drilling on the part of the lessee of three additional wells on the leased premises. The lessee agreed, additionally, to furnish a surety company bond for $15,000 guaranteeing the faithful performance of his obligations under the lease. The lessee, however, was unable to furnish the required bond, and on May 23, 1930, the day the lease was signed, he addressed the lessors a letter to that effect, and, in lieu of the bond, offered to proceed with the drilling of the wells and the performance of all obligations contemplated by the lease on receipt of a copy of the letter evidencing the lessors' understanding of this supplemental agreement, drilling operations to be started on the first well on or before June 5, 1930, his policy of compensation insurance to be deposited with the lessors, and lessors to be authorized to retain all the executed copies of the lease until the lessee had complied with the obligations and covenants undertaken thereunder. The letter further referred to the understanding of the parties that, when all his obligations were complied with, a duplicate original of the lease would be delivered to the lessee. On the same day the conditions set forth in the letter were accepted by the lessors, and the lessee immediately assigned and delivered to them his compensation insurance policy, and on June 4, 1930, began his drilling operations, which he continued until June 16, 1930, when he was enjoined by the plaintiff in this suit.

Appellants contend that there was no valid oil and gas lease between them and Riggs, and therefore no basis for the call in warranty and demand for damages. Appellants' contention rests upon their assumption that their transaction with Riggs amounted to nothing more than a proposed lease which was never delivered, and that Riggs undertook and carried on his drilling operations at his own risk and peril, under his letter of May 23, 1930. Appellants also contend that it was incumbent on Riggs to examine their titles to the property leased. There is no force in the contentions.

The letter of Riggs was written and accepted contemporaneously with the execution of the lease. The letter does not invalidate nor suspend any of the essential parts of the contract. On the contrary, it confirms them. The letter simply modifies the lease to the extent of relieving the lessee of the obligation of furnishing a bond of $15,000, providing, in lieu thereof, for the retention by the lessors of all the copies of the lease until the lessee shall have complied with the obligations of his con-

tract. It also accelerates the beginning of drilling operations by the lessee. The documents taken together evidence the contract between the parties.

The retention of the documents by the lessors is not indicative of a conditional agreement, but merely a precautionary measure resorted to by the parties to safeguard the lessors' interests under the lease. It was the execution and not the precarious possession of the contract by the lessors that was essential to its validity.

The lessee is not chargeable with knowledge of the lessors' lack of title to the leased property. Independently of the warranty implied by law, the lease itself declared, "Lessors hereby warrant and agree to defend the title to the land herein described." The duty rested upon the lessors, and not upon the lessee, to ascertain the nature of their title to the lands leased by them. The lessee was not in fault because he relied on the lessors' professions and guaranties that they owned the property. The lessors cannot be permitted to avoid the effect of their warranty at the expense of the lessee, who had a right to rely on the warranty which was voluntarily given in his favor.

It is said that the contract between the parties contains a condition that is at once suspensive and potestative, and therefore it is unenforceable. But the lessors permitted the lessee to take possession of the leased premises under the contract and to expend a large sum of money in his drilling operations up to the time they were stopped at the instance of the actual owners of the property. The lessee assumed the obligations of his contract and discharged them as far as he was permitted to do so. It is now too late for the lessors to repudiate their obligations under the contract. Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 160, 95 So. 538; Owens v. Muslow, 166 La. 423, 117 So. 449, 450.

In Owens v. Muslow, this court held that a so-called contract which leaves one of the parties to perform or not at his mere will or pleasure is no contract at all, but is capable of ripening into a contract if the party not bound performs his part thereof. In that case the other party can no longer recede from his own obligation. The court said, "Such a contract therefore does produce a certain nexus or legal bond between the parties, imperfect at first but nevertheless capable of becoming perfect by the mere act of one of the parties without further agreement."

The facts of the cases cited by appellants clearly differentiate them from the facts of this case, and the decisions themselves are not in conflict with the views herein expressed.

Under their express warranty of title, the lessors were legally obligated to protect the lessee's possession of the leased premises for the purpose of his drilling operations thereon. Even without such express warranty it was the duty of the lessors to prevent the eviction of the lessee from the leased premises. Civ. Code, art. 2501. When the lessee's possession was disturbed by plaintiffs, and his lessors failed to protect him against such disturbance, he not being in fault, his obligation to drill one or more wells must be considered as fulfilled by his warrantors' breach of their contract.

The condition of an obligation is considered as fulfilled, when· the fulfillment of it has been prevented by the party whose obligation depends upon the conditions. Civ. Code, art. 2040; Deslonde v. O'Hern, 39 La. Ann. 14, 1 So. 286; Lloyd v. Dickson, 116 La. 90, 40 So. 542; In re Brown, 118 La. 943, 43 So. 628; Southport Mill v. Friedrichs, 171 La. 786, 132 So. 346.

Appellants complain that the amount awarded as damages by the court below was not proved with sufficient certainty, and, in any event, that it is excessive.

The defendant, Riggs, sets forth in paragraph II of his call in warranty and claim for damages the items of expense incurred by him in his drilling operations, totaling $11,069.08. The judge of the district court appears to have carefully considered the various items, and in his written reasons for judgment, which are in the record, he has listed those items which he found to be correct, totaling $7,341.23. His judgment was rendered accordingly. We find nothing from our examination of the record to warrant us in disturbing his award.

For the reasons assigned, the judgment appealed from is affirmed.