163 So.2d 406 (1964)
Alphonse L. BREAUX et al., Plaintiffs and Appellants,
v.
PAN AMERICAN PETROLEUM CORPORATION and Socony Mobile Oil Company, Inc., Defendants and Appellees.
No. 1057.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1964.
Rehearing Denied April 28, 1964.
Writ Refused June 26, 1964.
*408 Charles Jaubert, Lake Charles, for plaintiffs-appellants.
Liskow & Lewis, by Cullen Liskow, Lake Charles, for defendants-appellees.
Before TATE, FRUGÉ and HOOD, Judges.
HOOD, Judge.
Plaintiffs in this suit are the owners of a tract of land in Cameron Parish and defendants are the joint owners of an oil, gas and mineral lease affecting that tract. Plaintiffs demand a judgment for damages alleged to have been sustained by them as the result of a breach by defendants of an implied condition in the mineral lease contract to protect plaintiffs from the drainage of oil and gas from beneath the surface of their land. Defendants filed an exception of no cause of action and an exception of res judicata. After a hearing the trial judge overruled the exception of res judicata, but he maintained the exception of no cause of action and rendered judgment dismissing the suit. Plaintiffs have appealed.
For the purpose of determining the issues raised by an exception of no cause of action, the well pleaded facts in the petition and in any annexed documents must be accepted as true. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54; Harwood Oil & Mining Company v. Black, 240 La. 641, 124 So.2d 764.
The facts as alleged in plaintiffs' petition in this case are that plaintiffs own a tract of land in Cameron Parish, and defendants are joint owners of a mineral lease affecting that property. Defendants also own a mineral lease affecting another tract of land lying immediately east of and adjacent to plaintiffs' property. An oil well, designated as the Adam Doiron Well No. 2, was completed on the adjoining tract in 1945, the bottom of such well being located within 80 feet of plaintiffs' property. Substantial quantities of oil and gas have been produced from the Adam Doiron Well No. 2.
Plaintiffs allege that "at least one-half (½) of the gas and oil produced from said well has been drawn from under the land of petitioners above described." In 1954 plaintiffs demanded that defendants take steps to protect their land from drainage by the Adam Doiron Well No. 2. After that demand was made, plaintiffs filed two separate suits against defendants in the district court, in the first of which suits the district court held that defendants had been put in default in 1954, and the judgment decreed that plaintiffs' right to sue for damages because of the alleged drainage was reserved to them. According to the petition in the instant suit, "nothing has been done to protect petitioners from said drainage despite the fact that defendants have drilled, what they call an offset well, which did not have the effect of protecting petitioners from said drainage."
Plaintiffs then aver that they have been damaged to the extent of one-half of the royalty due on the Adam Doiron Well No. 2, and that the defendants' lease affecting plaintiffs' land provides for a royalty of one-eighth of the oil or gas produced. On these allegations plaintiffs demand judgment "for the value of 1/16th of all gas and oil produced from Adam Doiron No. 2 Well from the time that they were placed in default."
After a hearing on the exceptions, the trial judge concluded that in this State a landowner is not entitled to recover damages because of the drainage of oil or gas from under his land, that the sole and only remedy of the owner-lessor against the mineral lessee who fails to protect the leased property from drainage is to demand a forfeiture *409 of the lease, that in this case it has already been determined that plaintiffs are not entitled to a forfeiture of the lease, and that consequently there is no other remedy available to plaintiffs under the facts alleged here. For these reasons the trial judge maintained the exception of no cause of action.
In urging that the trial judge erred, plaintiffs argue that under our law there is an implied obligation in every mineral lease that the lessee will prevent drainage of the leased property. They contend that defendants have violated this implied obligation by failing to prevent drainage of oil and gas from under the leased premises, and that because of their failure to do so defendants are liable to plaintiffs for damages in an amount equal to the value of a portion of the oil and gas produced from the draining well.
We agree with plaintiffs and the amicus curiae that under the jurisprudence of this State there is an implied obligation in every mineral lease that the lessee will develop the leased premises for minerals with reasonable diligence for the mutual profit and advantage of both the lessor and the lessee. We think this includes an implied obligation on the part of the lessee to exercise reasonable diligence in endeavoring to prevent drainage of oil and gas from under the leased premises. The question of whether the lessee must drill one or more offset wells in order to comply with this implied obligation should be determined, we think, according to the facts and circumstances which exist in each individual case. Some of the circumstances to be considered are whether the drainage is substantial, whether a reasonably prudent operator with knowledge of the facts would drill an offset well under the circumstances, and whether the lessee might expect to receive a reasonable profit above the cost of drilling and operating the offset well. See Sohio Petroleum Company v. Miller, 237 La. 1015, 112 So.2d 695; Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26; Reagan v. Murphy, 235 La. 529, 105 So.2d 210; Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473; 2 Summers, Oil and Gas, § 399, pp. 568 et seq.; Brown, The Law of Oil and Gas Leases, § 16.02, pp. 272 et seq., and § 16.03, p. 322; Merrill, Implied Covenants in Oil & Gas Leases (2nd Ed. 1940) 255.
We think the owner-lessor clearly would have a cause of action against his mineral lessee for cancellation of the lease where the lessee has failed or refused to exercise reasonable diligence in an effort to prevent substantial damage. In the instant suit, however, the plaintiffs are not seeking a cancellation of the lease. Instead, they demand damages in an amount equal to the value of a portion of the oil and gas produced from the draining well. All parties agree that no Louisiana court, and no other court applying Louisiana law, has ever awarded a landowner damages because of the drainage of oil or gas from beneath his property by wells located on adjacent lands, where there has been no subsurface trespass of the landowner's property.
It is well settled in Louisiana that oil and gas in place are fugitive minerals which are not subject to absolute ownership as specific things apart from the soil. The owner of land does not own the fugitive oil or gas beneath it so as to have the right to follow it after it has left his land, but he does have the right to drill on his land and to become the owner of such oil and gas as he may thereby draw through the soil and bring into his possession. Rives v. Gulf Refining Co. of Louisiana, 133 La. 178, 62 So. 623; Higgins Oil & Fuel Co. v. Guaranty Oil Co., 145 La. 233, 82 So. 206, 5 A.L.R. 411; Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207; Louisiana Gas & Fuel Co. v. White Bros., 157 La. 728, 103 So. 23; Liles v. Texas Co., 166 La. 293, 117 So. 229; Federal Land Bank of New Orleans v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948; Gulf Refining Co. of Louisiana v. *410 Glassell, 186 La. 190, 171 So. 846; Southport Petroleum Co. of Delaware v. Fithian, 203 La. 49, 13 So.2d 382; Gliptis v. Fifteen Oil Co., 204 La. 896, 16 So.2d 471; Ware v. Baucum, 221 La. 259, 59 So.2d 182; Billeaud Planters, Inc. v. Union Oil Company of California, 245 F.2d 14 (5th Cir., 1957); and Lilly v. Conservation Commissioner of Louisiana, 29 F.Supp. 892 (E.D., La.1939).
In Louisiana Gas & Fuel Co. v. White Bros., supra, plaintiff owned a mineral lease affecting one tract of land and defendant owned a mineral lease affecting an adjoining tract. A well was drilled on each of these tracts, but defendant's well blew out allowing the gas to escape, thus exhausting the common reservoir into which both parties had drilled. Plaintiff sued defendant for damages in an amount alleged to be the value of one-fourth of the gas which had been wasted from the reservoir. The trial court overruled an exception of no cause of action filed by defendant, and the case was tried on the merits resulting in a judgment rejecting plaintiff's demands. On appeal, our Supreme Court reversed that portion of the trial court's judgment which overruled the exception, and held that the exception of no cause of action should be maintained. In doing so the court said:
"But plaintiff is not the owner of the gas beneath its holdings; and one of the best evidences of that, if it were not already established authoritatively, is this very impossibility of showing damages as above said.
"But:
"`It is the settled jurisprudence of this state that oil and gas in place are not subject to absolute ownership as specific things apart from the soil of which they form part.' Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207.
"And again:
"`The owner (of the soil) has no absolute property in such oils, gases, and waters, but only the right to draw them through the soil and thereby become the owner of them.' 150 La. 863, 91 So. 245.
"And in Higgins Oil & Fuel Co. v. Guaranty Oil Co., 145 La. 233, 82 So. 206, 5 A.L.R. 411, this court held, that:
"`An owner of land does not own the fugitive oil (and gas) beneath it, and cannot complain that it is being drawn off by a pump (or well) sunk by an adjoining land owner.'
"Hence it follows that, were defendant merely drawing out of the common reservoir, and using legitimately the 10,000,000 feet of gas now going to waste, it is clear that plaintiff would have no cause whatever to complain. Hence, therefore, plaintiff would have no moneyed (or other) claim against defendant.
"The question then arises, does the fact that the gas is being wasted instead of being used, give plaintiff the right to a moneyed claim against defendant. We think not; the gas that is being wasted is no more plaintiff's gas than it would be were it being used legitimately. He has therefore no claim for the value thereof." (103 So., pp. 23 and 24).
The court further stated in that case that although the owner of lands in an oil or gas field does not have a cause of action for a money judgment because of the alleged drainage, he does have a remedy against the waste and wasteful methods of the adjoining owner, which remedy consists of an action to abate a nuisance or to enjoin the waste.
In McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383, 85 A.L.R. 1147, the defendant drilled a gas well on a 93-acre tract of land on which it held a mineral lease. The pressure of the well broke the casing and the well blew out uncontrolled for about three years. Twenty-one plaintiffs, who owned all lands within a radius of one mile of this 93-acre tract, sued defendant *411 for damages for the alleged drainage of gas from beneath their lands, alleging negligence on the part of defendant in allowing the well to blow out. The Supreme Court affirmed the judgment of the trial court maintaining an exception of no cause of action and dismissing the suit, assigning as the primary reason therefor that a plaintiff landowner cannot recover damages from the owner of an adjoining tract when the latter negligently permits a well on his property to blow out, the only remedy which the plaintiff has under those circumstances being an action to enjoin the waste. The court also observed that it would be impossible to measure the damages claimed by plaintiffs, since they did not allege and could not prove the total area covered by the reservoir and what part of it lies beneath plaintiffs' holdings, and that plaintiffs did not allege sufficient negligence on the part of defendant to warrant recovery. In assigning one of those reasons, the court in its opinion said:
"The fact that the plaintiffs in this case are the owners of all of the lands within a radius of a mile from the well complained of does not except the suit from the rule stated in Louisiana Gas & Fuel Co. v. White Bros., 157 La. 728, 103 So. 23; that is, that a landowner has no right or cause of action for damages against an owner of adjoining land for negligently permitting a well near the line to blow out and allowing the gas to escape; the only remedy being an action to enjoin the waste. * * *" (143 So. 385).
Later in the same opinion, however, the court indicated that under some circumstances, where there is fault on the part of the neighboring owner and the loss is measurable, a landowner might be entitled to damages because of drainage of oil and gas from beneath his property. In that connection, the court said:
"* * * It is conceivable, therefore, that a case might be presented where a landowner would be entitled to damages for loss or impairment of his oil or gas rights by some fault of a neighbor on his own land. But the fault in such a case would have to consist of something more than a mere exercise of bad judgment on the part of the neighbor in drilling on his own land, and the loss sustained by the complaining neighbor would have to be measurable, approximately, if not exactly, in money. An illustration of a case where such damages could be estimated would be one where the market value of the plaintiff's land or mineral rights is impaired by the fault of his neighbor. * * *" (143 So. 386).
Following that decision, a second suit was instituted by the same parties against the same defendant, in which suit additional acts of negligence on the part of the defendant were alleged. See McCoy v. Arkansas Natural Gas Corporation, 191 La. 332, 185 So. 274. In this last mentioned suit plaintiffs alleged that defendant willfully, deliberately and intentionally inflicted upon plaintiffs the enormous hurt and damage which they alleged they had sustained. And, in the later suit the plaintiffs did not base their quantum of damages on the value of the gas drained from the lands, but instead they based it on allegations that the commercial value of their property for mineral purposes had been practically destroyed. The trial court rendered judgment in favor of plaintiffs, but on appeal the judgment of the trial court was reversed on the ground that plaintiffs had failed to show negligence on the part of the defendant-lessee. The Supreme Court reiterated the statement made by it in the earlier case to the effect that under some circumstances, when there is fault on the part of the neighbor and the loss is measurable in money, a landowner might be entitled to recover damages from the owner or lessee of neighboring property because of drainage of oil or gas from under his land. The court also said:
"* * * In the absence of allegations in the second suit that the acts *412 of negligence charged against defendant were committed knowingly, deliberately and intentionally, a plea of res adjudicata might have been sustained on the theory that our first opinion is the law of this case. So that the allegations that defendant had willfully and intentionally inflicted injury upon plaintiffs were made for the definite purpose of making the petition in the second suit conform to our ruling in the first suit." (185 So. 276).
In the recent case of Adams v. Grigsby, La.App. 2 Cir., 152 So.2d 619 (Cert. denied), plaintiffs sued for injunctive relief and for damages because of the alleged drainage of water from under their property. Defendant was an oil operator who was engaged in recovering oil and gas from beneath lands located near plaintiffs' property. The procedure he used in recovering these minerals was to inject water into the underground formations. The large quantity of water used for that purpose was obtained from wells which he drilled on lands located near plaintiffs' property. Plaintiffs conceded defendant's right to drill a well on his property and to withdraw water therefrom, but they denied that he has the right to withdraw water from a common subsurface reservoir in such quantities as would drain the sands from which his neighbors obtain water. Our brothers of the Second Circuit held, correctly we think, that the laws relating to the capture of oil and gas also apply in this case, since water as well as oil and gas are characterized as fugitive substances. The court recognized that plaintiffs would be entitled to damages "if caused by intent or negligence on the part of said defendant," but it affirmed the judgment of the trial court maintaining an exception of no cause of action because the petition contained no factual allegations which would justify a conclusion that defendant had intentionally or negligently caused damage to the plaintiffs.
We think a correct interpretation of the jurisprudence hereinabove cited is that a landowner is not entitled to recover damages from the owner or lessee of adjoining lands on the ground that oil and gas have been drained from beneath his property by wells located on the adjacent tract, unless it is established that the oil or gas withdrawn from the common reservoir has been wasted, that the waste was caused by the negligence of defendant or by his willful intent to injure plaintiff, and that the quantity of oil and gas withdrawn from beneath plaintiff's property can be measured or that the damages sustained by plaintiff can be ascertained with some degree of accuracy. In the instant suit there are no allegations to the effect that the oil or gas produced from the adjoining tract has been wasted, and there are no allegations that defendants were negligent or that they willfully intended to injure plaintiffs. According to the established jurisprudence, therefore, the petition in this suit fails to state a cause of action for damages against defendants, insofar as it is directed against them as lessees of the adjoining tract of land or as operators of the draining well located on adjacent lands.
In the instant suit, however, the defendants are not only lessees of an adjoining tract of land, but they also own the lease affecting plaintiffs' property, that is, the property which allegedly is being drained. Plaintiffs contend that although they have failed to state a cause of action against defendants as lessees of the adjoining tract or as operators of the draining well, they have alleged facts which, if proved, would entitle them to recover damages from defendants as plaintiffs' own lessees, because of a breach of the implied condition in the lease to protect plaintiffs' property from drainage. In support of their position, plaintiffs and the amicus curiae direct our attention particularly to the cases of Louisiana Gas Lands v. Burrow, 197 La. 275, 1 So.2d 518; and Billeaud Planters v. Union Oil Company of California (W.D.La.), 144 F.Supp. 564 (and C.C.A., 5 Cir., 245 F.2d 14).
*413 In the Burrow case, supra, the plaintiff sued its own lessee for cancellation of the mineral lease and for damages on the ground that the lessee had failed to produce gas in reasonable quantities from plaintiff's property. In the alternative, plaintiff sought damages on the ground that the lessee had allowed drainage from beneath plaintiff's property. The trial court dismissed the suit on an exception of no cause of action, and that judgment was affirmed on appeal. In affirming the trial court the Supreme Court observed that plaintiff's petition was lengthy, containing some detailed allegations as to the production which had been obtained from wells on plaintiff's land as well as to the production from the alleged draining wells. Yet, the Supreme Court held:

"Plaintiff's allegations that there has been drainage of its lands to its prejudice are also merely conclusions of the pleader and disclose no cause of action. Specific facts should be pleaded to support those allegations. Hart v. Standard Oil Company, 168 La. 183, 121 So. 737.

"The petition does not state any fact which could serve as a basis for its general charge that plaintiff's lands have been subjected to prejudicial drainage, nor does the petition state any fact by which the extent of the drainage, if any, could be established. A fair reading of the many articles and numerous allegations contained in the petition discloses that the whole theory of plaintiff's demand relates to the alleged failure of defendants to produce and market the full allowable amount of gas from its wells, or some unstated percentage thereof, and that this constituted a breach of defendant's implied obligation to reasonably operate the wells to their mutual profit and to protect the leased premises against drainage.
"Our conclusion is that the petition as written does not contain sufficient allegations of issuable fact to furnish a basis upon which any judgment may be rendered. * * *" (Emphasis added).
In Hart v. Standard Oil Co. of Louisiana, 168 La. 183, 121 So. 737, cited by the court in the Burrow case, plaintiff sued its lessee for cancellation of a mineral lease and for damages. As one of the grounds for the relief sought, plaintiffs alleged "that an offset well near the said land is draining the oil and gas from under it to its detriment and to the damage of petitioners." The Supreme Court affirmed the judgment of the trial court dismissing the suit on an exception of no cause of action, assigning as one of its reasons for doing so that:
"The petition in this case does not allege a single fact to sustain the conclusion, pleaded therein, that defendant has not properly developed the leased property and has not protected it from drainage by drilling offset wells, or has, in any respect, failed to comply with any of the obligations imposed upon it by the lease. * * *" (Emphasis added).
In Billeaud Planters v. Union Oil Company of California, supra (245 F.2d 14), plaintiffs sued for damages because of drainage of gas from under their land by wells located on adjoining property. The defendant owned the lease affecting plaintiffs' land and it also was the lessee of the adjoining landowner on whose property the draining well was located. Plaintiffs' demands were rejected because a 60-day demand notice had not been given as required by the lease. In the decision rendered by the district court, however, the court expressed the opinion that "if and when the precise question comes before the Louisiana Supreme Court," that court will hold that if the lessee violates the implied obligation contained in the lease to prevent the leased property from being drained "the lessee is liable and accountable for the royalty on the portion of the oil and gas which he drains from beneath the leased premises, subject, *414 of course, to the provisions of the lease contract itself." (144 F.Supp. 564, 569). On appeal, the judgment of the district court dismissing plaintiffs' suit was affirmed. In its opinion, however, the Fifth Circuit Court of Appeal makes no comment on the last-mentioned observation of the district court. Instead, the Court of Appeal said:
"We think appellants' claim that appellee's action in draining appellants' `C' sand by producing gas and condensate from adjoining leases constituted wrongful conduct and therefore tortious, finds no support in Louisiana law. This argument completely overlooks the fact that in order to found an action on tort there must be a breach of a general duty or obligation owed to the public, apart from the nonperformance of a contract. * * * And what is important here is that there is no legal duty or obligation on the part of land owners to refrain from engaging in the lawful production of gas from their own lands, notwithstanding the fact that such production may cause drainage from the sands underlying adjoining lands. (Citations omitted). This is so for the reason that appellants are not the owners of the gas beneath their holdings, Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, but have only the right to drill for the oil and gas and to become the owners of such minerals as they may bring into their possession. Higgins Oil & Fuel Co. v. Guaranty Oil Co., supra. Consequently, it cannot be here said that apart from the lease appellee's action was wrongful, illegal or amounted in law to an offense or quasi-offense. * * *" (245 F.2d 19).
Although the dicta contained in the opinion of the trial court in the Billeaud case supports plaintiffs' arguments that under a proper showing of facts a landowner may recover from his own lessee where the latter causes prejudicial drainage of the leased premises, it appears from the language used by the Fifth Circuit Court of Appeal in reviewing the case that the reviewing court did not fully concur in the views expressed by the trial court. But, regardless of whether the reviewing court agreed or disagreed on that point, there is nothing in the opinion of either court which relieves the plaintiff-landowner from the burden of alleging adequate facts to support a claim for damages if his petition is to state a cause of action.
In Roberts v. United Carbon Co. (C.C. A., 5 Cir.), 78 F.2d 39, the court commented:
"* * * The Supreme Court of Louisiana in recent cases has strongly maintained the impossibility of proving the damages done by drainage, insisting also on the local law that the oil and gas underground are not capable of ownership. * * *" (78 F.2d 41).
After citing and discussing the case of Louisiana Gas & Fuel Co. v. White Bros., supra (103 So. 23), and the two McCoy cases (143 So. 383 and 143 So. 58), the court in Roberts v. United Carbon Co., supra, further said:
"* * * These cases lean strongly against a remedy by damages for drainage whether in a suit in tort or on a contract obligation under a lease. Yet we do not think they so establish a rule of local law as to compel us to hold that no remedy by damages can exist. * * *" (78 F.2d 42).
And, in Merrill, Implied Covenants in Oil & Gas Leases, 2nd Ed., 1940, the author states: "Louisiana also holds that damages are not recoverable for drainage." As authority for that statement he cites McCoy v. State Line Oil & Gas Co., 175 La. 231, 143 So. 58; but he also cites as being contra the Billeaud Planters case, supra.
Plaintiffs and the amicus curiae also cite decisions from courts of other states in which damages were awarded because of *415 drainage of oil and gas from beneath plaintiffs' property. We recognize that damages are awarded in some other states on that ground, but we do not consider the cases cited to be controlling, primarily because of the fact that under our law the landowner does not own the oil and gas beneath his property and the owner of the neighboring tract has the right, just as he does, to capture and retain the fugitive minerals which he may find under his land, even though those minerals may have flowed from beneath adjoining property.
Although there seems to be some authority to the contrary, we know of no reason why a landowner would not be entitled to recover from his mineral lessee the damages which the lessor has sustained as the result of a breach of the implied obligation on the part of the lessee to exercise reasonable diligence in endeavoring to prevent substantial drainage of the leased premises. We think the lessor under those circumstances would have a cause of action for damages for breach of a mineral lease contract just as he would for breach of any other contract. In order for the landowner-lessee to recover damages in such a case, however, it is necessary that he allege and prove with some degree of accuracy the amount of damages which he has sustained because of the lessee's breach of contract. We realize the difficulty, and perhaps the impossibility, of establishing the amount of damages which a lessor may have sustained because of the failure of his lessee to exercise reasonable diligence in preventing drainage of the leased premises. And, it perhaps is because of this difficult burden of proof that some courts and text writers have expressed the view that damages are not recoverable for drainage in Louisiana.
As we view the matter, a landowner has no right to prevent the owner of a neighboring tract from drilling on his own property and reducing to possession the fugitive minerals which he may find. The remedy which the first landowner has in such a case is either (1) to drill offset wells on his own property in order that he also may capture and retain a portion of the minerals before the common reservoir is depleted, or (2) he may attempt to have a pooling or production unit created in order that he may share in the production from the neighboring well. When the first landowner has leased his property for the development of minerals, the implied obligation of the lessee to "prevent drainage" is actually an implied obligation to drill offset wells on the leased premises when necessary in order that the lessor may also obtain a part of the minerals from the common reservoir before that reservoir is depleted. The implied obligation of the lessee to prevent drainage may also include an attempt to have a pooling unit formed. But, in any case, the measure of damages which the lessor sustains because of a breach by the lessee of this implied obligation is the value of the minerals or royalties which the lessor would have received had the lessee complied with his obligation under the lease.
In order for a landowner-lessor to recover damages from his lessee because of a breach of the lessee's implied obligation to exercise reasonable diligence in preventing drainage, we think the lessor must allege and present facts which establish that oil and gas could have been produced from the same reservoir by offset wells drilled on the leased premises, and that it would have been economically feasible for the lessee to drill such offset wells. He must also allege and prove with some degree of certainty the quantity of oil or gas which would have been produced from the offset wells, and the value of the minerals which the landowner would have received from that production had the offset wells been timely drilled and completed. It is conceivable, although it is not necessary for a determination to that effect be made in this case, that the lessor would be entitled to recover damages by alleging and proving that the lessee could have created a pooling unit, thus enabling the landowner to participate in the production from the draining well, but that he failed to do so. But, even on *416 that ground the lessor must establish the value of the minerals which he would have received if such a unit had been timely formed.
In the instant suit plaintiffs do not allege any of the above-mentioned facts which we consider to be essential to support a judgment for damages. They have failed to allege facts, for instance, which if proved would show that defendant could have successfully produced oil and gas from an offset well on the leased property, that the drilling of such a well would be prudent or economically feasible, and the amount of oil and gas which would have been produced from such a well. They also do not allege that defendants could have effected a pooling unit under which plaintiffs would participate in the production from the draining well, and the amount plaintiffs would have received from such a unit. Considering solely the facts alleged in plaintiffs' petition, therefore, and assuming those facts to be true, we conclude that plaintiffs have failed to allege facts sufficient to sustain a judgment for the relief sought. The trial court, therefore, correctly maintained the exception of no cause of action.
Plaintiffs contend further, however, that in the instant suit, unlike most of the cases which have been cited, the defendants occupy the dual position of being lessees of plaintiffs' property and also lessees of the adjoining tract on which the draining well is located. They argue that under those circumstances, since the draining well is actually operated by the defendants, their actions in producing from the adjoining well to the detriment of plaintiffs' land constitutes a willful and an active breach of the implied conditions of the lease, and that plaintiffs accordingly are entitled to recover damages, amounting to one-half (½) the royalties which are due on the Adam Doiron No. 2 Well. The question presented, therefore, is whether a different measure of damages should be used where plaintiff's lessee is also the operator of the draining well.
We are aware of the fact that courts in some other jurisdictions have held that the plaintiff landowner has a much stronger case in an action against his own lessee, based on an alleged breach of the implied condition to prevent drainage, where the drainage of plaintiff's land is caused by a neighboring well which is owned or operated by plaintiff's lessee. See Humphreys Oil Co. v. Tatum (C.C.A., 5 Cir., Tex.), 26 F.2d 882 (Cert. denied, 278 U.S. 633, 49 S.Ct. 31, 73 L.Ed. 550); Trimble v. Hope Natural Gas Co. (1933), 113 W.Va. 839, 169 S.E. 529; Olsen v. Sinclair Oil & Gas Company (D.C., Wyoming), 212 F.Supp. 332; R. R. Bush Oil Co. v. Beverly-Lincoln Land Co., 69 Cal.App.2d 246, 158 P.2d 754.
In the Louisiana cases which we have examined, where plaintiff's lessee was also the owner or lessee of the adjoining property on which the draining well was located, the same rules apparently were applied as are applied where the defendant does not occupy that dual position. See Coyle v. North American Oil Consolidated, supra (9 So.2d 473); Billeaud Planters v. Union Oil Company of California, supra (245 F.2d 14); and Swope v. Holmes, 169 La. 17, 124 So. 131. In the Coyle case, plaintiffs' demands for a cancellation of the mineral lease were denied. One of the reasons assigned by the Supreme Court for that ruling was that "the plaintiffs have entirely failed to sustain the burden of proving that the wells on the adjacent property will drain a sufficient quantity of oil from their premises (if any at all) to justify the lessee in going to the expense of drilling offset wells," even though the evidence showed that defendants were producing from the adjacent wells which were alleged to be draining plaintiffs' property. The language used by the Fifth Circuit Court of Appeals in the Billeaud case, supra, which language was quoted earlier in this opinion, indicates that the same type of proof is necessary to support a judgment *417 for plaintiff in an action such as this, where plaintiff's lessee is also the operator of the draining well, as is required in an action where plaintiff's lessee has no control over the draining well. In Swope v. Holmes, supra, the plaintiff demanded only a cancellation of the lease, which was granted. Although one of the reasons for cancelling the lease was that the defendant-lessee had drilled wells on adjacent property which were draining the leased premises, the court assigned as additional grounds for such cancellation that defendant also had ceased production on and had abandoned the leased lands.
If plaintiffs' argument is adopted it would logically follow that in every case where a person owns mineral leases on two adjoining tracts of land, both of which overlie the same common reservoir, he would not be permitted to produce more oil from one tract than from the other, or he would have to pay royalties to the lessors in both leases from all producing wells located on either tract. We do not think the laws or jurisprudence of this State place any such restriction on the lessee who is in that position. If plaintiffs' lessee (who also controls production from the adjacent draining well) should establish that it would be economically unfeasible for him to drill an offset well on plaintiffs' land, he nevertheless, under plaintiffs' interpretation of the law, would be compelled (1) to drill the offset well in spite of the cost, or (2) to surrender his lease, or (3) to discontinue producing from the adjacent well, or (4) to pay plaintiffs the value of a portion of the oil received from the adjacent well. We do not think the law would require the lessee under those circumstances to drill an offset well on plaintiffs' property when he could not hope to derive a profit from it, and in view of the established right of the adjoining landowner to capture and become the owner of the fugitive minerals which he may find under his land, we do not think plaintiffs have the right to compel their lessee to discontinue producing minerals from the neighboring tract or to pay to plaintiffs a portion of the oil produced from that tract.
We conclude, therefore, that plaintiffs in this suit have no greater rights and no different cause of action against defendants-lessees simply because the defendants are also the lessees of the adjoining tract of land on which the alleged draining well is located. For the reasons already assigned, we are convinced that the petition fails to state a cause of action even though defendants do occupy this dual position.
Although we have considered only the pleadings in arriving at this conclusion, we think it appropriate to mention that the record contains evidence which also may be considered in determining the issues presented by the exception of no cause of action. This evidence, we think, further supports the conclusions reached by the trial judge.
At the hearing on the exception of no cause of action and the exception of res judicata, defendants-exceptors offered in evidence the records of the two prior suits which plaintiffs instituted against the defendants in the district court, these being the two earlier suits which plaintiffs specifically mentioned in their petition. In each of these suits the petitioners demanded a cancellation of defendants' mineral lease affecting plaintiffs' property on substantially the same grounds as are alleged here. The records of these two suits were offered in evidence "for both exceptions," and they were admitted in evidence without objection. If objection had been made, of course, this evidence would not have been admissible in support of the exception of no cause of action, although it would have been admissible as to the other exception. LSA-C.C.P. Article 931. Under our jurisprudence, however, the admission of these suit records in evidence for both exceptions, without objection, has the effect of enlarging the pleadings and the evidence so introduced may be considered in determining *418 whether plaintiffs have a cause of action. See Williams v. Marionneaux, 240 La. 713, 124 So.2d 919; Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257; and Rheuark v. Terminal Mud & Chemical Co., 213 La. 732, 35 So.2d 592.
The evidence which appears in the record, considered with the pleadings, shows that in January, 1957, plaintiffs instituted suit against the defendants (or their ancestors in title) seeking a cancellation of the mineral lease affecting that property on substantially the same grounds as are alleged in the instant suit. Judgment was rendered in that case on November 13, 1957, decreeing that the Adam Doiron Well No. 2 "is draining the property belonging to plaintiffs" ordering defendants to commence operations to protect plaintiffs' land from drainage within 60 days or forfeit their lease, and reserving to plaintiffs the right, if any, to sue for damages arising from the drainage of their lands from said well. No appeal was taken from that judgment.
In compliance with the decree rendered on November 13, 1957, defendants drilled an offset well on plaintiffs' property, to the same reservoir from which the well on the adjoining tract was producing. The well was completed only as a gas producing well, however, and the Louisiana Conservation Commission ordered that it be shut in until such time as oil production from that reservoir is no longer possible.
In September, 1958, plaintiffs filed another suit against defendants in which they alleged that the defendants still had not taken adequate steps to protect their property from drainage. In that suit they demanded that the mineral lease affecting their property be cancelled, that they recover attorney's fees and that the right be reserved to them to sue defendants for the damages occasioned by the drainage of their property. Following a trial on the merits, the trial court held that defendants had complied with the judgment rendered in the earlier suit having done "everything possible to complete the well as an oil well," and judgment accordingly was rendered in the district court rejecting plaintiffs' demands and dismissing the suit. In that judgment no provision was made for reserving to plaintiffs the right to sue for damages. Plaintiffs appealed and the Court of Appeal, First Circuit, affirmed the judgment of the trial court. See Breaux v. Magnolia Petroleum Company, La.App. 1 Cir., 121 So.2d 280.
The evidence further shows that at the time of the trial of the second suit the Adam Doiron Well No. 2, alleged to be the draining well, was producing an average of 10 barrels of oil per day. At that same time there were two oil producing wells located on plaintiffs' 61 acre tract, both of which were producing an aggregate of 71 barrels of oil per day. A third oil well located on plaintiffs' property had been producing prior to the trial, but had sanded up and was being reworked at that time. The well which defendants drilled in compliance with the judgment rendered on November 13, 1957, was a fourth well drilled on plaintiffs' property. All of the above-mentioned producing oil wells, including the Adam Doiron Well No. 2 and the wells located on plaintiffs' land, were producing from the same reservoir. The Court of Appeal, First Circuit, found that plaintiffs "did not present any expert testimony to show that the defendants could have taken any other steps to protect Lot 2 from drainage by the Adam Doiron No. 2 well," and that "defendants' efforts to prevent further drainage were reasonable and proper." (Breaux v. Magnolia Petroleum Company, La.App. 1 Cir., 121 So.2d 280).
Considering the records of these prior suits only insofar as they may have some bearing on the exception of no cause of action now being considered, we find that they show at least that there has been some production of oil and gas from plaintiffs' land, that defendants have drilled an offset well on the leased property in an effort to prevent further drainage of it, and that *419 the Court of Appeal, First Circuit, found that the drilling of that offset well constituted a reasonable effort on the part of the lessee to prevent drainage of the leased premises and was sufficient to defeat plaintiffs' action for cancellation of the lease. There are no allegations in the petition filed in the instant suit which are inconsistent with any of the above-stated facts. Since these facts do appear in the record, we think plaintiffs must allege other or additional facts which, if proved and considered with those appearing in the record, will entitle them to the relief which they seek. Considering the evidence which is in the record along with the pleadings, and assuming the facts so pleaded to be true, we think plaintiffs' petition is deficient (in addition to the reasons already assigned) in failing to show that plaintiffs have been damaged or prejudiced at all by the production from the Adam Doiron Well No. 2.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.
TATE, Judge (dissenting).
The writer respectfully dissents from the majority's dismissal of this suit upon an exception of no cause of action.
Accepting the allegations of the petition as true, as we are required to do for trial of such an exception, the plaintiffs have been drained by their own mineral lessee of a specified amount of oil and gas from under their landand yet their suit is dismissed upon the exception, thus of course preventing them from having a trial on the merits of their claim.
As I understand the majority opinion, it concedes that a landowner has a cause of action against his mineral lessee for damages for drainage resulting from the lessee's breach of its implied obligation to prevent such. However, the majority nevertheless dismisses this suit for such drainage damages, upon the holding that a petition for drainage damages must additionally allege (1) adequate facts by which to establish the value of the minerals the landowner should have received had the lessee complied with its obligation under the laws to prevent drainage, and also (2) that such drainage could have been prevented, either by drilling an offset well or possibly by creating a pooling unit under the Louisiana conservation laws.
As to the first suggested requirement, I think the present petition adequately alleges the facts of drainage and damage through drainage. See Section I of dissent below. As to the second suggested requirement, I think that, once the breach of implied obligation to prevent drainage is adequately alleged, then it is a matter of defense on the merits either (a) that such drainage did not occur, or (b), if it did, that the drainage could not reasonably have been prevented by offset wells or otherwise. See Section II of dissent below.

I.
The petition in this suit, entitled "Claim for damages for breach of mineral lease contract", alleges:
The defendants are the mineral lessees both of a tract owned by the plaintiff-landowners and also of property immediately adjacent to the plaintiffs' land. On this adjacent land, the defendants brought in a producing well "with the bottom of the hole within 80 feet from land of petitioners".
Further, "said [neighboring] well has produced 604,543 barrels of oil and 86,000 M.C.F. of gas", of which at least one-half "has been drawn from under the land of petitioners above described". Additionally, the "defendants acknowledge from their production of said well they have been draining petitioner". Also, the "defendants have been put in default by the letter of August 20, 1954, and subsequent letters".
*420 The petition concludes that, despite the plaintiffs' putting the defendants in default as to their violation of the lease obligations by permitting such drainage, nevertheless the defendants have failed to protect the plaintiff-landowners from said drainage; so that the petitioners have been damaged to the extent of one-half of the production on the adjacent well and are entitled to one-eighth of such half by reason of their lease provision requiring a royalty in such proportion.
Frankly, I cannot imagine what more the plaintiff-landowners could have alleged as to the facts of the drainage from their land, as to the estimated amount thereof, and as to the measure of damages to which they are entitled by reason of this breach of the lease obligation.
For instance, perhaps the allegations of the petition could have averred additionally that such and such a geologist's report will indicate that, of the total reservoir, so many barrels of oil lay underneath the plaintiffs' land, from which so many have been drained by the well bottomed 80 feet away from the plaintiffs' boundary line. But to require such an allegation upon penalty of dismissal of the suit, is to require an exactitude and amount of factual detail in the pleadings necessary to entitle a party to his day in court, such as has been foreign to the Louisiana procedural jurisprudence for several decades.
In short, I do not think that a petition need set forth detailed, evidence establishing the precise amount of the drainage from their landssuch evidence to "establish" the amount of the drainage is properly to be produced on a trial of the facts.

II.
As Judge Edwin F. Hunter, our distinguished colleague on the federal bench, stated in Billeaud Planters v. Union Oil Co. of California, W.D.La., 144 F.Supp. 564 at 569 (1956): "* * * the weight of authority as expressed by various text writers, supported by decisions from other oil producing states, and dicta from Louisiana decisions, support the general legal proposition that there is an implied obligation on the part of the lessee under a mineral lease to operate the lease for the mutual benefit of lessor and lessee, and accordingly, to prevent the leased land from being drained by wells on adjoining property; and if a lessee permits drainage to occur through his fault, the land owner may recover the value of the royalty of the oil and gas which has been drained from his land. [Citation of authorities omitted.]"
Indeed, there is no reason under Louisiana law why a party aggrieved by breach of an obligation cannot recover damages, in addition or in the alternative to other remedies, such as cancellation, specific performance, etc. See LSA-Civil Code Articles 1930-1934. As specifically provided by LSA-Civil Code Article 1934, a creditor is due damages for the breach of a nonmonied obligation owed to him, being "the amount of the loss he has sustained, and the profit of which he has been deprived".
The mineral lessee's obligation to prevent drainage from the property of its lessor does not, in my opinion, depend upon whether the lessee could prevent such drainage only by drilling a profitable well on its own lessor's land; and I do not understand the majority opinion so to hold.
For example, the lessee's obligation to drill upon and properly develop its lessor's land, may be satisfied by drilling either by it or by another lessee within a conservation unit which includes the land of the lessor as well as adjacent tracts owned by other landowners. Just so, the lessee's obligation to prevent drainage may be satisfied by a resort to conservation units based on the draining well, and including the portion of the lessor-landowners' tract which is drained by such well, if the geological evidence so indicates. In this manner, the production from a previously-drilled well may be allocated to the acreage within a conservation unit which is actually drained *421 by the well. This, in fact, was exactly what the lessee did in Humble Oil & Refining Co. v. Jones, La.App. 3 Cir., 157 So.2d 110, certiorari denied, La., 159 So.2d 284.
In our still-developing mineral law and jurisprudence, there may well be other means by which a mineral lessee may satisfy its lease obligation to prevent its own lessee's land from being drilled.
The obligation of a mineral lessee to prevent drainage from its lessor's land is breached by its permitting such drainage (let alone, as here, by its actually being responsible for the drainage by operation of the neighboring well, see Section III of dissent below). This being a passive breach, the lessee must be placed in default and given an opportunity to remedy the breach, so that the lessee must be placed in default as a prerequisite to the recovery of damages, LSA-C.C. Arts. 1912, 1933. (This is ordinarily the case: I pretermit discussion of the interesting suggestion that in the present suit the breach was active not passive, see LSA-C.C. Art. 1931, because the lessees themselves were doing the draining through the adjacent well, not merely passively permitting it. Cf., Town of Eunice v. M & L Construction Co., La. App. 3 Cir., 123 So.2d 579, 583.)
However, the circumstance seems immaterial to the existence of the landowner's cause of action for damages by reason of the mineral lessee's breach of its implied obligation to prevent drainage, that the lessee might remedy its breach either by drilling an offset well or by securing creation or reformation of a conservation unit based on the draining well or by other means.
As a matter of general law relating to breach of obligations in Louisiana, it seems clear to me that a landowner's petition adequately sets forth a cause of action to recover damages due by reason of his mineral lessee's breach of its obligation to prevent drainage, when the landowner alleges the facts surrounding the breach and the claim for damages based upon the alleged loss by the landowner of his share of the production drained from his land.
It is true that the lessee may have factual defenses to the landowner's claim for damages; but these relate to the merits and not to the existence of the cause of action. The landowner is not required to negative these defenses in his petition, any more than a tort-petitioner is required to negative contributory negligence, see 1 McMahon, Louisiana Practice (1939), pp. 582 et seq.
The lessee may, for instance, defend on the ground that it cannot be adequately proved that such drainage has actually occurred: However, the difficulty of proving the precise amount thereof at a trial on the merits should not prevent the plaintiff landowner from obtaining his day in court.[1]
Again, the mineral lessee might defend on the ground that such drainage could not reasonably be prevented by offset drilling or conservation remedies: However, this sort of defense is in the nature of a plea of confession and avoidance, which as an affirmative defense must be specially pleaded *422 and must be proved by the defendant. See 15 West's Louisiana Digest (1936 Volume), Pleading. The landowner-lessor is not required to negative in his petition such possible factual or legal defenses by the lessee to the landowner's pleaded claim for damages arising by reason of the breach of the lessee's obligation to prevent drainage.

III.
The landowner-lessee has a cause of action against his lessee for breach of the latter's obligation to prevent drainage even if the drainage from the neighboring tract is done by a stranger mineral operator. The wrong against the landowner is all the greater when the drainage is not merely permitted by the landowner's mineral lessee, but when additionally (as in the present case) such lessee is actually doing the draining itself, through wells operated by it on the adjacent tract.
It is stated in the comprehensive paper by the Honorable Blake G. Arata of the New Orleans bar on the "Louisiana Law of Drainage" delivered at the Eleventh Annual Institute on Mineral Law at the Louisiana State University (1964), the proceedings of which are to be published later this year by the university press (footnotes interpolated in brackets into text quoted):
"A body of law has built up, almost imperceptibly, in those situations where the lessor's property is being drained by wells owned by his lessee on adjoining lands: The only Louisiana case which turned on this point is Swope v. Holmes. [169 La. 17, 124 So. 131 (1959).] In the Swope case, the plaintiff instituted an action for cancellation of the lease alleging that two producing wells situated 75 feet from his property line were draining his property. It was established that the defendant, his lessee, was the owner of the adjacent property on which the wells were situated. The Supreme Court ordered cancellation of the lease but cited no authority for its holding and did not attempt to review the law on the subject of the implied covenant to protect the property from drainage. However, it seems obvious that the most significant point in justification of the court's decision was the fact that the defendant himself was the owner of the draining wells. * *
"In other jurisdictions it has been held that drainage by the lessee's own wells presents `a much stronger' case in favor of finding a breach of the covenant for protection. [Humphreys Oil Company v. Tatum, 26 F.2d 882 (C.C.A.5th 1928); Cert. den. 278 U.S. 633, 73 L.Ed. 550, 49 S.Ct. 31 (1928).] West Virginia in a series of cases has gone so far as to categorize the drainage of leased property by a common lessee as `fraudulent'. [Trimble v. Hope Nat. Gas Co., (113 W.Va. 839) 169 S.E. 529 (W.Va.1933).]
"A rule of law also seems to be emerging in other jurisdictions to the effect that the `prudent operator' rule should not apply to a situation where the lessee is draining his own lessor's land and the lessee should not be allowed to avoid responsibility merely by showing that an offset well would be unprofitable." [Olsen v. Sinclair Oil & Gas Co., 212 F.Supp. 332 (D.C.Wyo.1963); R. R. Bush Oil Co. v. Beverly-Lincoln Land Co., 69 Cal.App.2d 246, 158 P.2d 754 (1945).]
By the mineral lease, the landowner confers upon his lessee the exclusive right to drill upon and to develop mineral production from his land, and the mineral lessee is by the lease entitled to receive by far the major portion of the mineral production properly to be allocated to the leased acreage. As a result, the mineral lessee is under the duty to exercise the broad powers given it by the lease in accordance with the fundamental purpose for which they were granted by the lessor-landowner, namely, to secure the greatest possible ultimate return to the landowner from the mineral development of his land. See McDonald v. Grande Corp., La.App., 148 So.2d 441, and treatise and text authorities cited therein at 148 So.2d 449.
Insofar as the lessee's share of the oil produced from a well, it actually makes no *423 difference to a mineral lessee with leases over both tracts of land whether or not the well on one tract is draining some of the oil from under another nearby tract. The mineral lessee will in either case receive its seven-eighths or so of the oil produced.
On the other hand, it does make a great deal of difference to the landowner-lessor whose land is being drained by the neighboring wellfor, in that case, the landowner's one-eighth of the oil will go, not to him as provided by his lease, but to his neighbor on whose land the draining well is located.
In instances such as the present, it may not be profitable to the lessee to drill two wells, one on each tract, to drain the same pool; but nevertheless the mineral lessee is not permitted to drain a tract leased by it through a well drilled and operated by it on another tract also leased by it. It must protect its own landowner-lessee from drainage through breach of the lessee's obligation to prevent such, it cannot simply ignore its obligation to prevent such drainage.
The drastic remedy of cancellation may not be available in such instance if a second well could not produce oil in paying quantities, Breaux v. Magnolia Oil Co., La.App. 1 Cir., 121 So.2d 280, but the lessee must respond in damages in such event if it drains its own landowner's tract, Phillips Petroleum Co. v. Millette, 221 Miss. 1, 72 So.2d 176 (1954).
In the last-cited case, the Supreme Court of Mississippi held that a mineral lessee must compensate its landowner-lessor for minerals drained from under the landowner's tract by the lessee's operation of a well on a neighboring tract, stating, 72 So.2d 179: "It is contrary to every concept of equity and justice to hold that a lessee may drill on adjoining land and through such a well drain dry the land" of its lessor, and "The obligation was upon appellant as lessee not to deplete the resources of its lessor. It violated that obligation and duty and claims that it is entitled to do so with impunity."

IV.
I may again point out that a mineral lessee is not without remedy to protect itself from the imposition of damages, after it is put in default for permitting or causing drainage from its landowner-lessor's land.[2] The lessee's first obvious remedy is to provoke a conservation hearing to constitute a commissioner's unit, if its landowner-lessor's tract is actually being drained, to include the surface acreage actually drained by the well on the neighboring tract.
The mineral lessee is ordinarily in a much better position than the landowner to make this determination and to secure favorable conservation administrative action. The lessee has readily available resources in its files of available geological information concerning the well drilled and operated by it, as well as through its staff of geologists.
Further, the mineral lessee, which receives the bulk of the mineral production attributable to the leased tract and which has the exclusive right (and the consequent duty) to secure the maximum mineral production reasonably attributable to such tract, owes the landowner an affirmative duty to secure favorable administrative action under the conservation laws, at least after the landowner has placed the lessee in default.
Professor Maurice Merrill, author of the leading treatise on the question, Covenants Implied in Oil and Gas Leases (2d ed. 1940), has observed that, because of the above-noted circumstances and the advent of the conservation laws, the mineral lessee has an additional implied obligation, arising from the lease, to take such administrative steps *424 as are necessary to assure its landowner-lessor the largest possible allowable. Merrill, Fulfilling Implied Covenants Administratively, 9 Okla.Law Rev. 125 (1956); Merrill, Current Problems in the Law of Implied Covenants in Oil and Gas Leases, 23 Tex.Law Rev. 137 (1944). See also: Byrd, Contractual and Property Rights as Affected by Conservation Laws and Regulations, 10 Inst. on Oil and Gas Law and Taxation 1 (1959); Moses, The Effect of Louisiana's Conservation Statute on the Doctrine of Implied Covenants in Oil and Gas Leases, 27 Tul.L.Rev. 313, 321-322 (1953).
In short, the mineral lessee may defend itself against a claim for damages by its landowner-lessor arising out of the lessee's alleged failure to prevent drainage, after being placed in default, by the lessee's showing, from its superior geological information and staff, that no such drainage has occurred, or perhaps that it is impractical to drill a profitable well to prevent drainage while likewise conservation administrative action is either impracticable to assure the landowner his fair share of the oil under the leased tract or else has unsuccessfully been sought.
However, the landowner's petition adequately alleging the facts of a breach of the lessee's obligation to prevent drainage, should not be dismissed because the landowner fails to negative these defenses available to the lessee. Moreover, the lessee, because of its superior knowledge and expertise, is ordinarily in a much better position than is the landowner to verify the existence of these defenses.

V.
As a concluding aside, the facts in the records of the 1957 and 1959 suits for cancellation by the present landowners are completely irrelevant to determination of an exception of no cause of action as to this 1963 suit. (Due to the difference in demands, these earlier suits are not res judicata.) Whether or not drainage was occurring in 1957 and 1959, is not at all determinative of what the evidence could indicate in a trial on the merits in this 1963 suit as to post-1959 operations on the plaintiffs' land and on the adjacent tract upon which the draining well is located.
If however we could take such evidence into consideration (which we cannot), it shows that the adjacent well is in fact drilling the plaintiffs' tract, but that such drainage cannot reasonably be prevented by drilling an offset well, since an offset well (required to be drilled as a result of the 1957 suit by the plaintiffs) did not produce oil in paying quantities from the strata under the plaintiffs' land which the defendant lessees are continuing to drain through their well on the adjacent tract also leased by them.
As we noted earlier in this dissent, these facts on their face establish a prima facie case entitling the plaintiff-landowners to recovery of damages sustained by reason of their own lessees' draining the plaintiffs' land leased by them, in violation of their obligation arising by reason of the mineral lease to prevent such drainage or to compensate the plaintiff-landowners for it. See, e. g., Phillips Petroleum Co. v. Millette, 221 Miss. 1, 72 So.2d 176 (1954).
Further, the lease entered in evidence in the 1957 suit (P-1) expressly provides that the lessee must pay the landowner-lessor one-eighth of the oil "produced and saved from said land". As the Phillips case stated, construing an identical provision: "It does not limit their [the landowners'] royalty to one-eighth of the oil produced and saved from said land through wells drilled on said land, but obligates appellant [the mineral lessee] to pay them the royalty on the oil produced and saved from said land regardless of how it may be produced or where it may be drawn to the surface." 72 So.2d 178.
Conclusion.
Succinctly stated, the lessees wish to retain their exclusive mineral lease rights as to *425 the drained acreage, but they do not wish to comply with their obligation arising under the lease to prevent drainage.
For the reasons stated at such length, I must respectfully dissent from my esteemed brothers' dismissal of the plaintiffs' well-pleaded suit upon an exception of no cause of action.

On Application for Rehearing
En Banc. Rehearing denied.
TATE, Judge (dissenting from denial).
In addition to the reasons set forth in the original dissenting opinion, the writer also respectfully dissents from the denial of rehearing upon the ground that, at the very least, the majority should have remanded this suit to permit amendment, instead of dismissing it outright.
The majority dismissed this suit upon an exception of no cause of action essentially because of an alleged insufficiency of allegations in the plaintiffs' petition. Of course, a dismissal upon such ground is in effect a dismissal as of non-suit, which does not bar another action in which the petition supplies the essential allegations. Callender v. Marks, 185 La. 948, 171 So. 86; Slaughter v. Gravity Drainage District, La.App. 3 Cir., 160 So.2d 762; McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 16, 48 et seq. (1934).
If the majority is correct in holding that there were insufficient allegations, the appropriate disposition is to remand the action to permit amendment to supply the missing allegations, not to dismiss it outright. As was stated in Holahan v. Phillips, La.App. 4 Cir., 145 So.2d 35, 38, citations omitted: "The jurisprudence of this state is well established to the effect that where a petition fails to state a cause of action, due to insufficient allegations, an opportunity to allege those facts should be afforded in the interest of upholding substantive rights instead of subtle technicalities." See also: Douglas v. Haro, 214 La. 1099, 39 So.2d 744; Lemoine v. Lacour, 213 La. 109, 34 So.2d 392.
In pointing out this error of the majority under its own holding, the writer nevertheless reiterates his opinion that, for the reasons assigned in his original dissent, the majority erred as a matter of substantive law in holding that the plaintiffs do not have a cause of action, under the facts pleaded in the petition, to recover damages resulting from the defendants' breach of their lease obligation to prevent drainage from the tract of their landowner-lessors, the plaintiffs herein.
SAVOY, J., recused.
NOTES
[1] Parenthetically, I may observe, conservation units are commonly set up on the basis of geological evidence as to the area actually drained by a particular well. See Humble Oil & Refining Co. v. Jones, La.App., 157 So.2d 110, referred to previously in text of dissent. See also papers on drainage and the proof of drainage by Messrs. Arata and Limes, presented at the Eleventh Annual Institute on Mineral Law at the Louisiana State University in 1964, which will be published during the coming year by the Louisiana State University Press. See also Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541, in which the equities under each surface tract in a large conventional unit were calculated on the basis of geological findings as to the extent of each of eighteen producing sands underlying the surface tracts, and the total unit production was divided among the tracts on the basis of the precise amount of minerals estimated to be under each surface tract.
[2] I am indebted for the authorities to be cited below to the interesting and stimulating article by James A. George, which we have seen in draft form, concerning the impact of conservation laws on the mutual obligations of the mineral lease. The article will be published in the April or the June, 1964, issue of the Louisiana Law Review.