YELYERTON, Judge.
A landowner, Clarence E. Burley, sued American Natural Crude Oil Acquisition, Inc. (ANCOA), and Sunbelt Royalty, Inc. (Sunbelt), for past-due oil royalties. AN-COA was sued as purchaser of the crude oil produced from an oil well in Concordia Parish. For two years after production began there was a voluntary unit which excluded Burley’s land. Then a new unit was ordered by the Louisiana Commissioner of Conservation which included Burley’s land. The basic issue is whether plaintiff is entitled to be paid royalties by ANCOA for the two years his land was not in the unit. To get this issue before the court ANCOA filed an exception of no cause of action. The parties agreed to present evidence on the exception and allow this issue to be resolved by this procedural means, utilizing a mechanism that has been approved in other cases. Boykin v. Foster, 493 So.2d 731 (La.App.2d Cir.1986); and Sammy Davis Jr. v. Glen McGlothin, 524 So.2d 1320 (La.App. 3rd Cir.1988). The trial judge maintained the exception and dismissed ANCOA, and the landowner appealed. We affirm.
The well was drilled in 1982 pursuant to leases owned by Sunbelt. The land was leased to Sunbelt by various adjacent landowners, which comprised a voluntary uniti-zation agreement. Burley was a party to this agreement, as the record shows his name on the “Declaration of Pooling” agreement filed in the record. Upon obtaining the lease, Sunbelt had to get from the Department of Conservation approval of the pooling and a document stating what sands were producing the oil. The document sent by the Department is called an R-4 form. Meng Operating and Exploration Company, Inc., the operator of the well, submitted the R-4 form to the Department, stating that the productive sand was the C-5 sand of the Wilcox formation, after the well was brought in on November 1, 1982. There were four sands involved in the voluntary agreement: the Miller, Turner, Artmann, and Nichols sands.
As the productive sands were found in the C-5 level of the Wilcox formation, the Department created a new unit, which left Burley out of the unit. From the production period of November 1, 1982, to May 1, 1984, ANCOA purchased the oil from Sunbelt.
Approximately two years later, Burley filed a complaint and the Department reassessed its determination of what sands were productive. Pursuant to this new assessment, explained by letter dated April 30, 1984, it was found that the Turner sands were the actual producing sands. Burley’s land was thus encompassed in this new unit, which became effective on May 1, 1984.
Burley’s suit contended that ANCOA owed him back royalty payments from November 1,1982, to May 1,1984, since he did not receive any royalty payments within that period of time.
On appeal Burley first argues that the Department’s order of May 1, 1984, should be applied retroactively to November 1, 1982. The appellant, however, offers no authority for this proposition. The Commissioner of Conservation has the authority to regulate the conservation of oil and gas in the State (See La.R.S. 30.1 et seq.), but nothing in the Department’s order or cover letter of April 30, 1984, refers to the second unit created by the second R-4 form as being retroactive in application.
The appellant secondly argues that AN-COA breached an implied covenant to prevent waste, citing Breaux v. Pan Am Petroleum Corp., 163 So.2d 406 (La.App. 3rd Cir.1964), writ denied 246 La. 581, 165 So.2d 481 (1964). The facts of Breaux are inapposite to the case before us. The defendant in Breaux was the lessee. In our case, ANCOA was the purchaser of oil.
*103 Finally, the appellant’s argument that this was the sale of a thing not owned by the seller (LSA-C.C. art. 521), is not applicable, because oil and gas, as long as they are fugitive minerals, are not subject to ownership by the owner of the land. The landowner does have the right to draw the minerals through the soil and bring them into his possession. However, until they are in his possession, he is not the owner of the fugitive minerals. Breaux, supra at 409, Pierce v. Goldking Properties, Inc., 396 So.2d 528 (La.App. 3rd Cir.1981), writ denied 400 So.2d 904 (La.1981).
As correctly pointed out by the trial court in its reasons for judgment, ANCÜA was simply paying for the crude oil pursuant to the agreement established by the Department. Further, since there were no allegations concerning any complicity on ANCOA’s part with respect to the initial unit created, the petition, taking into account pleadings as deemed expanded by the joint exhibits and agreed evidence, fails to state a cause of action. For these reasons, the trial court’s judgment is affirmed at the cost of the appellant.
AFFIRMED.